[L. A. No. 4839.   In Bank.—October 20, 1920.]'

ALVA R. McCARTY, Executor, etc., Appellant, Cross-Defendant and Respondent, v. PHILIP L. WILSON, Respondent, Cross-Complainant and Appellant.

[1] BILL OF EXCEPTIONS—RE-ENGROSSMENT—SUBSEQUENT SETTLEMENT —JURISDICTION.—Where a bill of exceptions had been ordered settled and engrossed, but was not in fact settled at the time an order directing a re-engrossment was made, the application for a re-engrossment was made in a proceeding which had not been taken or completed in a legal sense, so as to be susceptible of having applied to it the statutory limit of six months under section 473 of the Code of Civil Procedure, and therefore the trial judge still retained jurisdictional control over the settlement of the bill, even though the time prescribed for the original presentation had expired.

[2] ID.—RE-ENGROSSMENT OF BILL—EXCLUSION OF UNNECESSARY MATTER—POWER OF COURT.—A trial court which still retains jurisdictional control over the settlement of a bill of exceptions has the power to direct a re-engrossment so as to make the bill conform with verity and brevity by excluding therefrom such matters as are admittedly not necessary to a proper presentation of the appeal.

[3] ID.—ORDER STRIKING OUT IMMATERIAL MATTER—WHEN CONCLUSIVE. Where, upon plaintiff's application for re-engrossment of a bill of exceptions, counsel for defendant was present by agreement and was heard upon his objection that matters material to him would be eliminated by the re-engrossment as ordered, and the court, being fully advised in the matter, denied the objection, the order is conclusive that the matter stricken out was not material.

[4] ESTATES OF DECEASED PERSONS—SALE OF REAL PROPERTY—SUFFICIENCY OF ORDER TO SHOW CAUSE.—Under section 1536 of the Code of Civil Procedure prior to the amendment of 1919, and under section 1538 of the same code prior to its repeal in the same year, an order requiring all persons interested in the estate of a deceased person to show cause why an order should not be granted to the executor to sell so much of the real estate of the deceased "as shall be necessary," did not amount to a fatal variation from the language required by the statute, although the sale was not sought because it was necessary to meet debts, but rather on the ground that it would be beneficial to the estate.

[5] ID.—CONSTRUCTION OF SECTION 1538, CODE OF CIVIL PROCEDURE.— Reading section 1538 of the Code of Civil Procedure as a whole, it is obvious that the words "such estate" are used to designate, and do in fact mean, so much of the real estate of the deceased

as the court in the exercise of its sound discretion may consider necessary to be sold, whether to secure cash to pay debts or the like, or to secure the most advantageous and beneficial administration of the estate, or the advantage, benefit, and best interest of those interested.

[6] Specific Performance—Contract to Purchase Real Property—Conveyance Clear of Encumbrances—Tower Supporting Electric Power Line Excluded.—Specific performance of a contract to purchase real property cannot be successfully resisted upon an alleged failure of the plaintiff to perform an agreement that defendant should receive a deed and certificate of title showing title in him free from encumbrances, where the encumbrance complained of existed openly, notoriously, and continuously and consisted of an easement of way for an electric power transmission line · consisting of wires carried upon steel towers sixty feet in height and fourteen feet square at the base, resting upon solid and permanent foundations, one of which towers was known by defendant to be upon the property.

[7] Vendor and Vendee—Conveyance Free and Clear of Encumbrances—Physical Burdens Excluded.—A general agreement to convey land "free and clear of all encumbrances" does not refer to visible, physical burdens upon the land, permanent in character, and, in the absence of an express agreement, the vendee is presumed to have contracted to accept the land subject to physical encumbrances of an open and notorious nature.

[8] Id.—Contract of Sale of Real Property — Depreciation by Flood — Insufficient Excuse for Nonperformance.—One contracting to purchase land from an executor is not excused from performance by the circumstance that the property suffered a ten per cent depreciation in value by reason of a flood occurring between the time of the confirmation of the sale and the date of the commencement of the action for specific performance, such person being in equity the owner and in possession.

[9] Estates of Deceased Persons—Sale of Property—Default of Purchaser—Remedies.—The remedy provided by section 1554 of the Code of Civil Procedure for the resale of property by an executor upon default of the purchaser is not exclusive and does not prevent a resort by the executor to a suit for specific performance.

APPEALS from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Judgment for cross-defendant on cross-complaint affirmed. Judgment for defendant on complaint reversed.

The facts are stated in the opinion of the court.

Allison & Dickson, Meserve & Meserve, Edwin A. Meserve, Shirley E. Meserve, J. D. Taggart and Harold G. Ferguson for Appellant, Cross-defendant and Respondent.

A. W. Ashburn, for Respondent, Cross-complainant and Appellant.

LENNON, J.—This is an action wherein plaintiff, as executor of the estate of one Anna E. McCarty, deceased, seeks the specific performance of a contract to purchase certain real property belonging to said estate. Defendant has undertaken to avoid the contract on various grounds and by cross-complaint seeks to recover a deposit made by him. The trial court denied relief to plaintiff on his complaint and to defendant on his cross-complaint, and each party has appealed from that portion of the judgment adverse to him, both appeals being presented in a joint transcript and joint briefs.

[1] There is no merit in the contention that the bill of exceptions cannot be rightly resorted to in aid of the points made upon appeal. The bill was returned engrossed within the required time, and whether or not it had been correctly engrossed was a matter for the determination of the trial judge. (*Merced Bank* v. *Price,* 152 Cal. 697, [93 Pac. 866].) Although the bill in the instant case had been ordered settled and engrossed, it was not in fact settled at the time the order in question here directing a re-engrossment was made. That is to say, the bill was not then certified as settled and filed as a record of the court, and, of course, this could not be done until it was engrossed. (*Fountain Water Co.* v. *Superior Court,* 139 Cal. 648, [73 Pac. 590]; *Houghton* v. *Superior Court,* 128 Cal. 352, [60 Pac. 972].) Therefore, plaintiff's application for a re-engrossment of the bill was made in a proceeding which "had not been taken or completed in a legal sense, so as to be susceptible of having applied to it the statutory limit of six months, under section 473 of the Code of Civil Procedure." (*Smith* v. *City of Stockton,* 73 Cal. 204, [14 Pac. 675].) [2] It follows that, even though the bill may have been returned defectively engrossed, the trial judge still retained jurisdictional control over the settlement of the bill, even though the time prescribed for the

original presentation of the bill had expired, and accordingly had the power to direct a re-engrossment so as to make the bill conform with verity and brevity by excluding therefrom such matters as were admittedly not necessary to a proper presentation of plaintiff's appeal and obviously of no avail to the defendant's case upon appeal. (*Warner v. Thomas etc. Works,* 105 Cal. 409, [38 Pac. 960].) [3] Upon plaintiff's application for re-engrossment counsel for defendant was present by agreement and was heard upon his objection that matters material to him would be eliminated by the re-engrossment as ordered, and the court, being fully advised in the matter, denied this objection. In so doing, its order is conclusive, on the record before us, that the matter stricken out was not material. (*Hyde v. Boyle,* 89 Cal. 590, [26 Pac. 1092]; *In re Gates,* 90 Cal. 257, [27 Pac. 195].)

[4] The sale sought to be enforced herein was made pursuant to an order of the probate court which had jurisdiction of the estate of the deceased. Defendant insists, and the trial court held, that the probate court did not have jurisdicion to make the order of sale by reason of a defect in the order to show cause, published as the notice of the hearing of the petition of the executor of the estate for an order authorizing and directing the sale of the real estate involved in the present action. At the time the sale in question was made the Code of Civil Procedure authorized the court to make an order for the sale of real estate comprised in the estate of a decedent in case of necessity to pay debts, family allowance, and the like, or in case it appeared to the satisfaction of the court that it would be for the "advantage, benefit, and best interests of the estate, and those interested therein." (Code Civ. Proc., sec. 1536, prior to 1919 amendment.) Section 1538 of the same code, repealed in 1919, [Stats. 1919, p. 1177], was in effect at the time the sale was made and provided that when it appeared to the court from the petition of the executor or administrator that it was necessary or would be beneficial to sell the whole or some portion of the real estate for the purposes and reasons designated by law, or any of them, the petition must be filed, "and an order thereupon made, directing all persons interested in the estate to appear before the court, at a

time and place specified, . . . to show cause why an order should not be granted to the executor or administrator *for the sale of such estate.*" (Italics ours.) The order which is now under attack required all persons interested "to show cause why an order should not be granted to said executor to sell *so much of the real estate* of said deceased at private sale, *as shall be necessary.*" (Italics ours.) Defendant contends that the use of the word "necessary" amounted to a fatal variation from the language required by the statute, and that it was, moreover, positively misleading, inasmuch as the sale was not ordered because it was "necessary" to meet debts, expenses, or the like, but rather on the ground that it would be beneficial to the estate, a ground which, it is insisted, was concealed and even negatived by the wording of the order. The argument is ingenious, but without merit. **[5]** Reading section 1538 of the Code of Civil Procedure as a whole, it is obvious that the words "such estate" are used to designate, and do in fact mean, so much of the real estate of the deceased as the court in the exercise of its sound discretion may consider necessary to be sold, whether to secure cash to pay debts or the like, or to secure the most advantageous and beneficial administration of the estate, or the advantage, benefit, and best interest of those interested, and it is expressed aptly and plainly by the language of the order to show cause which defendant criticises. The suggestion that the word "necessary," as used in the order, should be construed as "necessary to pay debts and expenses" lies at the foundation of this criticism. The word "necessary," as used in the order, fairly and naturally means "necessary for any lawful purpose," and, so construed, it makes the language of the order comply substantially with the requirement of the statute. The validity of the sale cannot, therefore, be attacked on the ground that the probate court did not acquire jurisdiction to order the sale by reason of any defect in the order to show cause. The view which we have taken of the case makes it unnecessary for us to consider the point raised in the briefs concerning the precise effect upon the validity of subsequent proceedings of a defect in such an order.

The order of sale was valid and within the jurisdiction of the probate court. It is, therefore, doubtful whether the

defendant, having failed to appeal from the order confirm-
ing the sale, which fixed his liability as a purchaser, has the
right to set up, as a defense to the action for the purchase
price, alleged defects in the title which were within his
knowledge at the time the order of confirmation was made.
(*Hammond* v. *Cailleaud,* 111 Cal. 206, 220, [52 Am. St.
Rep. 167, 43 Pac. 207].) However that may be, we are
of the opinion that there is no merit in any of these
defenses. Defendant contends that the claimed defect in
the order to show cause, even if not in fact sufficient to
vitiate subsequent proceedings, at least threw a sufficient
doubt upon the title to make specific performance im-
possible. It cannot be fairly said that there was any defect
in the order to show cause which had the effect of throw-
ing any reasonable doubt upon the title. [6] Defendant's
chief ground for resisting the specific performance of his
contract with the estate is based upon an alleged failure of
plaintiff to perform an agreement that defendant should
receive a deed and certificate of title showing title in him
free from encumbrances. The record shows that the en-
cumbrance complained of existed openly, notoriously, and
continuously throughout the entire period covered by the
transactions here in question, and consisted of an easement
of way for an electric power transmission line consisting of
wires carried upon steel towers sixty feet in height and
fourteen feet square at the base, resting upon solid and
permanent foundations, one of which towers was known
by defendant to be upon the land in question. [7] A gen-
eral agreement to convey land "free and clear of all encum-
brances" does not refer to visible, physical burdens upon
the land, permanent in character, and, in the absence of
an express agreement, the vendee is presumed to have con-
tracted to accept the land subject to physical encumbrances
of an open and notorious nature. (*Ferguson* v. *Edgar,* 178
Cal. 17, [171 Pac. 1061]; *Jaques* v. *Tomb,* 179 Cal. 444,
[177 Pac. 280]; *Sisk* v. *Caswell,* 14 Cal. App. 377, [112 Pac.
185]; Brewster on Conveyances, sec. 203.) Therefore even
assuming that this representation to convey the land free
and clear of encumbrances was made by plaintiff in his
capacity as executor and not as an individual, and assuming,
also, that the defense may be considered in an action brought
by the executor for the purchase price after confirmation

of the sale, defendant cannot rely upon the representation as a ground for refusal to perform, for there has been no misrepresentation.

[8] Defendant finally insists that he is excused from performance by the circumstance that the property suffered a ten per cent depreciation in value by reason of a flood occurring between the time of the confirmation of the sale and the date of the commencement of the action. Bearing in mind that prior to the injury to the property defendant was in equity the owner of the land; that he was unquestionably entitled to the possession of the land under the contract with the estate, and that he had actually gone upon the land with men and teams and done about one thousand seven hundred dollars worth of grading, we have no doubt that the risk of loss was upon him.

[9] By virtue of the right conferred by section 1554 of the Code of Civil Procedure, the property might have been resold and the present purchaser held responsible if, on the second sale, enough was not realized to pay costs and the amount of the present bid, but that remedy is not exclusive and does not prevent a resort by the executor to a suit for specific performance. (*Crouse* v. *Peterson*, 130 Cal. 169, [80 Am. St. Rep. 89, 62 Pac. 574].)

It follows from what has been said that plaintiff is entitled to have the contract specifically enforced. The judgment for plaintiff and cross-defendant upon the cross-complaint is affirmed and the judgment for defendant upon the complaint is reversed.

Olney, J., Shaw, J., Wilbur, J., Sloane, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on November 19, 1920:

THE COURT.—In denying the petition for a rehearing we desire to say that in regard to the claimed depreciation in value by reason of flood, the fact that upon the confirmation of the sale the whole purchase price at once became due and payable, at least upon the original tender and

deposit of the deed by the executor, distinguishes the case from the cases relied upon by petitioner.

Rehearing denied.

[All the Justices concurred.