[Civ. No. 4111.   First Appellate District, Division Two.—July 18, 1922.]

## J. W. HENDERSON, Appellant, v. VERNALIS FARMING COMPANY (a Corporation), Respondent.

[1] BROKER'S COMMISSIONS — FALSE REPRESENTATIONS — FINANCIAL ABILITY OF VENDEES — EFFECT OF.—A broker is precluded from recovering his commission under a contract authorizing him to negotiate a sale of land, where he induces the vendor by means of false and fraudulent representations as to the financial ability of the prospective purchasers to enter ·into the contract for the sale and the purchasers make default in carrying out the terms of their contract, since there is a failure of consideration for the commission contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. W. Henderson and Fabian D. Brown for Appellant.

W. G. Irving and Philip C. Boardman for Respondent.

NOURSE, J.—Action to recover commissions under a contract between plaintiff's assignor, one W. C. Walker, and defendant. Judgment went for defendant in the trial court and plaintiff appeals. The contract, which is made a part of the answer, provides as follows:

"Whereas, said Vernalis Farming Company has agreed with said Walker that upon the sale by said Walker, or through his efforts, of a certain tract of farming land belonging to said Vernalis Farming Company to F. M. Cale and Theodore Schieve, the said Vernalis Farming Company will pay said Walker a commission of 2½ per centum upon the purchase price of said land, which 2½ per centum amounts to fifty-four hundred and sixty (5460) dollars, and a like commission of 2½ per centum, amounting to fifty-

Broker's right to commissions where purchaser procured by him is financially unable to perform his contract, notes, 139 **Am. St. Rep.** 250; 11 **Ann. Cas.** 786; 20 **L. R. A. (N. S.)** 1168.

four hundred and sixty (5460) dollars, to Estelle Nelson Avery, it is hereby agreed that in the event that such sale shall be concluded, the said Vernalis Farming Company will pay said commission to said Walker, as follows: $460.00 thereof in the promissory note of said Vernalis Farming Company, payable six months after date, with interest thereon at the rate of six per cent per annum; and $5000 thereof in one year from the date of such sale to said Cale and Schieve, with interest thereon at six per cent per annum, provided said Cale and Schieve shall within said period of one year pay to said Vernalis Farming Company the sum of $60,000 on account of said purchase price. If, however, said Cale and Schieve shall default in said payment of $60,000 and by reason of such default said Vernalis Farming Company shall take those certain pieces of real estate which have been conveyed to it by said Cale and Schieve as security for the payment of said first installment of $60,000, then and in that event and in lieu of the said cash commission to said Walker, the said Vernalis Farming Company will convey to said Walker an undivided one-half interest in that certain real estate situate in the City and County of San Francisco, State of California, on the corner of Fourth Avenue and Hugo Street, more fully described in the deed of said Cale and Schieve to Vernalis Farming Company, said property to be subject to the mortgage now existing thereon, and said Walker will return to said Vernalis Farming Company said sum of $460.00 with interest thereon at six per cent per annum.''

On the same day that this contract was executed (July 30, 1913) Cale and Schieve entered into a written agreement with defendant for the purchase of the property described in the commission agreement. By its terms Cale and Schieve agreed to pay for the property $218,400 in the following manner: $60,000 within one year from the signing of the contract, with interest on the whole amount of the purchase price from the date of the contract at the rate of six per cent per annum net, interest to be payable semi-annually; one-half of all moneys emanating from any contract sales of said lands, and any advance payments made by the prospective purchasers of said lands during said year; $60,000 annually thereafter and interest on the remaining unpaid portions of said purchase price; and one-

half of all moneys from land sales as above mentioned, until
the principal sum of $218,400 and interest shall be fully
paid and satisfied. In addition they agreed, at their own
cost and expense, within six months from the date of the
contract, to commence the actual reconstruction of the
broken levee on said premises, and to complete the recon-
struction of the levee system on the river side of said
property and place the property in a water-tight condition
within one year from date thereof; also that they would
within six months from date thereof, at their own cost and
expense, install and complete a second pumping plant in
addition to the one then on said premises, and lay main and
lateral pipe lines of sufficient capacity and extent to cover
all portions of said land not then covered by the existing
irrigation system. The contract provided that Cale and
Schieve should have immediate possession of the land and
the right at their own cost and expense to farm and culti-
vate the same during the continuance of the contract; that
they would pay all taxes and assessments that might there-
after be levied against said property; also that they would
pay the Pacific Gas and Electric Company all sums of
money thereafter to become due under the provisions of a
power contract between defendant and that company obli-
gating defendant to pay a minimum charge for power of
$1,200 per annum. Cale and Schieve were given the right
to negotiate sales by contract or otherwise of such parts
or portions of said land as defendant might designate, fifty
per cent of all moneys arising in any manner from such
contract sales to be immediately paid over to defendant.
The contract then provided: ''And as security for the per-
formance of all the conditions and terms of this agreement,
the parties of the first part [Cale and Schieve] agree that
within 18 days from the date hereof, they will cause to be
executed deeds of conveyance of the property hereinafter
described in which the party of the second part herein
[defendant] shall be named as grantee, said deeds being
sufficient to convey the title in fee, subject to existing en-
cumbrances, and will place said deeds in escrow with the
Mercantile Trust Company of the City of San Francisco,
with escrow instructions to said Trust Company to hold
said deeds during the lifetime of this contract, and if de-
fault be made in any of the terms of this contract by the

parties of the first part, then and in that event to deliver said deeds to the party of the second part, as fixed, settled, and liquidated damages for the breach of this obligation. The equities in the lots or pieces of property hereby agreed to be so conveyed are of the value of eighty-one thousand dollars ($81,000) over and above encumbrances, and should their valuation fall below that amount when appraised under direction of the second party, the first party agrees to deed additional property to bring the valuation up to said $81,000." (Here followed a description of the properties referred to, including the Hugo street property, together with the amount of the income, if any, derived therefrom, the owner's valuation, the amount of the encumbrance thereon, and the owner's equity therein.) "And upon final payment being made covering the full purchase price of the said 2730 acres together with all accrued interest thereon, the said party of the second part agrees to execute a good and sufficient deed of conveyance in favor of the parties of the first part, covering the above described 2730 acres more or less. Time is of the essence of this contract and in the event of a default in any of the terms and conditions hereof by the parties of the first part this contract shall cease and determine and in addition to the delivery of the escrow deeds hereinbefore provided for as liquidated damages, the parties of the second part shall retain for their own use and benefit all pumping plants, pipe lines, improvements and works and structures of every kind and character which may have been placed upon said premises by the parties of the first part and all contracts of sale made in respect to said 2730 acres or any part thereof, shall be freed and discharged of and from any and all claims of the said parties of the first part or either of them, and the parties of the first part will immediately vacate and surrender the possession of all the premises described in this agreement to the party of the second part. The said party of the second part shall be allowed fifteen (15) days from the date hereof in which to complete the examination and appraisal of the properties herein described, as owned by the parties of the first part."

Cale and Schieve executed and deposited with the Mercantile Trust Company the deeds provided by the agreement to be escrowed as security for its performance on their

part. They then took possession of the Vernalis Ranch in pursuance of the terms of the agreement and remained in possession for about a year, but failed to further perform its terms. While so in possession they defaulted in the payment of the interest which became due January 30, 1914, six months from the date of the contract, and also in other particulars which they had agreed to perform within six months from its date—the completion of a second pumping plant, etc. About February 7, 1914, defendant notified Cale and Schieve that they had forfeited their right to the property because of such default and demanded immediate possession. They, however, continued in possession for several months thereafter, but failed to repair the broken levee or to pay the taxes, the bills of the Pacific Gas and Electric Co. for electricity furnished to the ranch, or the first installment of $60,000 on the purchase price, or to do any of the things which they had agreed to do other than as above stated. Pursuant to its escrow instructions and in accordance with the provisions of the sale contract, about February 15, 1914, the Mercantile Trust Company delivered to defendant the deeds escrowed with them as security for performance by Cale and Schieve. The trial court found as a conclusion of law that the covenant referred to in the sale contract provided for a penalty and was void. About March 5, 1914, defendant, for the purpose of satisfying the terms of the commission contract, offered to deliver to plaintiff's assignor a deed running from the former to the latter and purporting to convey a one-half interest in the Hugo Street property, which was refused on the ground that it was insufficient to convey title. April 3, 1914, Cale and Schieve brought suit against defendant herein to compel it to reconvey these properties to them. July 22, 1914, the owner of one of the encumbrances on the Hugo Street property commenced foreclosure proceedings making defendant herein, Cale and Schieve, and others, defendants in that action. On or about September 1, 1915, defendant voluntarily deeded all the property referred to which it had received from Cale and Schieve, including the Hugo Street property, to the nominee of Cale and Schieve, and neither of the actions mentioned were ever prosecuted to judgment.

[1]  Respondent's theory, and the theory upon which, from the findings, it appears the trial court rendered judgment in its favor, is that appellant's assignor (Walker) induced defendant, by means of false and fraudulent representations as to the financial ability of the prospective purchasers, to enter into the contract of sale and that by reason of the default of the purchasers in carrying out its terms there was a total failure of consideration for the commission contract; and that assuming that appellant's assignor was entitled to the commission provided in the contract, this obligation was discharged by respondent's offer to deliver to Walker a deed of an undivided one-half of the Hugo Street property.

The trial court found: "The said W. C. Walker, plaintiff's predecessor in interest, prior to the thirtieth day of July, 1913, and for the purpose of inducing the defendant herein to enter into the said agreement of sale with the said Cale and Schieve, represented to the said defendant that the said F. M. Cale and the said Theo. Schieve were men of large financial means and were amply able to make the payments in said agreement of sale on their part to be made, and to perform all the other conditions and covenants therein contained and on their part to be performed; the said defendant believing said representation and relying thereon was induced thereby to make and enter into said agreement of sale with the said Cale and Schieve; in truth and in fact the said Cale and Schieve were not at the time said representations were made by the said Walker, and were not at any time thereafter financially able and had not at any time whatsoever the financial means or any means whatsoever sufficient to enable them to make the payments required to be made by them in accordance with the provisions of said agreement of sale, which fact was at all times and at the time said representations were made, well known to the said W. C. Walker; had it not been for said false and fraudulent representations of said W. C. Walker the said defendant would not have entered into the said agreement of sale with said Cale and Schieve; the said defendant received no consideration whatsoever for the execution of said commission contract."

There is no doubt that plaintiff's assignor made the representations found, and there is some evidence to support

the finding that they were false and fraudulent. This supports the conclusion of the trial court that the sale contract was void because procured by fraud. From this follows the finding of failure of consideration for the commission contract, all of which precludes recovery by appellant.

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 14, 1922.

All the Justices concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.