[Civ. No. 19507.   First Dist., Div. One.   Apr. 4, 1962.]

DAVE WISEMAN, Plaintiff and Respondent, v. THOMAS F. ROSS et al., Defendants and Appellants.

Athearn & Athearn, Robert E. Hatch and Leighton Hatch for Defendants and Appellants.

Peart, Baraty & Hassard, Joseph S. Rogers and Talbot S. Lindstrom for Plaintiff and Respondent.

BRAY, P. J.—Defendants appeal from a judgment in favor of plaintiff for $5,000 real estate broker's commission and $750 attorney's fees.

## QUESTION PRESENTED

Did plaintiff produce a buyer, ready, able and willing to buy?

## RECORD

On June 13, 1959, defendants held motel property in Redwood City in joint tenancy. Helge Bly and Edyth Bly owned a minor interest therein, also. The property was subject to certain encumbrances. On that date, plaintiff, a real estate broker with whom defendants had listed the property, informed defendants that he had an offer for it. They came to his office and discussed the offer. The offer was on a uniform agreement of sale and deposit receipt signed by the prospective buyers, Mr. and Mrs. Sochor. The purchase price was $92,500,—$25,000 cash payment, balance to be financed as there set forth. Defendants left, apparently to phone the Blys about the offer. About 7:30 defendants returned with the agreement signed by them in which they agreed to pay plaintiff a commission of $5,000 and attorney's fees in case of suit. However, defendants had written on the back of the agreement a counteroffer. It was understood that the agreement had no effect unless the counteroffer were accepted by the buyers. This counteroffer stated: "We will accept $95,000 price, providing we are able to cash out with a minimum of $25,000 to us after loans and commissions are paid. We will accept financing for balance." In turn the Sochors accepted the offer, signing below the counteroffer.

Plaintiff attempted to obtain the necessary financing for the Sochors. During the course of the next month and a half, his efforts were unsuccessful. Finally, on July 23, certain moneys and documents hereinafter discussed were deposited with the title company by the Sochors.

July 31, the title company notified defendants that it had all the funds and documents necessary to close the sale on the terms set forth in certain "Seller's Instructions" prepared under instructions of plaintiff, which defendants had not signed, and asked defendants to come in and sign the instructions and a deed. About this time Ross clearly indicated that Mrs. Ross was not in favor of the altered conditions of the sale. It is not clear whether prior thereto Ross indicated that he did not speak for her. August 3, because of the failure

of defendants to sign a deed, the purchasers withdrew their money from the title company escrow. Thereupon plaintiff, claiming to have performed all the conditions of the written agreement, brought this suit for the $5,000 mentioned therein. The trial court found that he had done so and that the Sochors had performed all of the conditions of the written agreement on their parts to be performed and were at all times "ready, willing and able to purchase said real property."

### Were the Buyers Ready, Willing and Able to Perform Their Agreement? No.

■ It is agreed by the parties that the issue in the trial court and here was and is whether plaintiff produced buyers ready, willing and able to buy in accordance with the terms of the uniform agreement of sale signed by defendants, that is, did he produce buyers who would pay defendants $95,000 total, of which sum defendants would be able "to cash out with a minimum of $25,000 to us after loans and commissions are paid." In spite of the court's finding to the contrary, it is clear that the buyers were not ready, able or willing to provide money or securities which would enable defendants to "cash out" with a minimum of $25,000 and at the same time meet a purchase price of $95,000. According to the instructions of the buyers to the title company, the following amounts and securities were deposited with it to pay the purchase price of the property:

1. Cash in escrow from buyers...............$25,514.00
2. Cash in escrow from loan, Thompson to Sochor ............................... 13,600.00
   (Portions of these two amounts would be used to pay certain existing encumbrances and costs so that the actual cash to be received by defendants as shown on the proposed "Seller's Instructions" was only $11,375.28.)
3. Promissory note secured by deed of trust, Sochor to Ross......................... 37,100.00
4. Promissory note secured by deed of trust in favor of Engdahl to be assumed by buyers.. 19,111.00[1]
   Total ............................$95,325.00

[1]In the "Seller's Instructions" which plaintiff had the title company prepare for defendants' signatures there is a requirement that $3,000 be paid on the Engdahl note so as to reduce it to $19,111. This $3,000, if paid, would have reduced the cash to be received by defendants from the $25,514, shown in the "Buyer's Instructions" pro tanto.

Plaintiff contends that this Engdahl note was for $24,000, and that therefore the total value of the deposit in escrow was $100,214. Plaintiff then contends that defendants could have discounted the $37,100 Sochor note and deed of trust for "roughly $23,000 to $25,000" and thereby would have "cashed out" with $25,000 and still have received a total purchase price of $95,000. There are two things wrong with this contention. The first is that the balance due on the Engdahl note, as shown by the title company records, was only $19,111. The second is that even assuming the amount due thereon to be $24,000, and the total paper purchase price to be $100,214, if the defendants were to "cash out" their $37,100 note for the maximum amount plaintiff testified it could be discounted for, $25,000, the $100,214 would be reduced by $12,100, giving defendants as the overall purchase price of their property only $88,114, instead of the required $95,000.

Plaintiff in his testimony conceded that the buyers' deposit with the title company did not meet the requirements of defendants' agreement. It was his testimony that had defendants accepted the buyers' offer as deposited with the title company "he would have come out with about $12,000, and then having a $37,000 note and deed of trust here, could have discounted it out for roughly $23,000 to $25,000, so that would have given him $37,000 cash." Plaintiff further testified that that was the only way in which he claimed that the buyers had met the terms of the agreement. When asked "I am just trying to find out if you claim that you produced an offer that came in within the terms of the June 13 written agreement without any qualifications or subsequent modifications?" he answered "I would have to answer that 'no.'"

Over defendants' objection that it violated the parol evidence rule and the statute of frauds, there was evidence to the effect that defendant Thomas Ross was willing to accept less cash than $25,000. However, there is no evidence that he was willing to accept a total purchase price of less than $95,000. Moreover, there is no evidence that defendant Pauline Ross was willing to accept less than $25,000 cash or $95,000 total purchase price. In any aspect of the case, whether the figures of plaintiff as to the total value of the purchasers' deposit in escrow, or the figures in the buyers' and proposed sellers' instructions to the title company are accepted, the "cashing out" proposed by plaintiff and the buyers meant a reduction in the purchase price to which defendants had not agreed. Moreover, it meant that the sellers

would have been in the position of having transferred their property and thereafter trying to arrange a discounting of the promissory note.

While the general rule is as set forth in *Malmstedt* v. *Stillwell* (1930) 110 Cal.App. 393, 398 [294 P. 41], " [W]here the owner accepts the buyer procured . . . he thereby admits the readiness, willingness and ability of the purchaser to consummate the sale . . ." such rule does not apply where, as here, at the time of the execution of the written agreement, it was understood by the parties that the buyers' acceptance of the sellers' offer was subject to the buyers being able to finance their purchase along the lines required by the agreement.

The judgment is reversed.

Tobriner, J., and Sullivan, J., concurred.