[Civ. No. 8878.   Fourth Dist., Div. One.   Sept. 15, 1969.]

BAY SHORE HOMES, INC., Plaintiff, Cross-defendant and Appellant, v. SAN DIEGO TRUST & SAVINGS BANK, as Administrator With the Will Annexed, etc., et al., Defendants, Cross-complainants and Respondents; STAN MAYKUT, Cross-defendant and Appellant.

Woolley, Crake, Collins & Ward and William O. Ward III for Plaintiff, Cross-defendant and Appellant.

Leon E. Campbell for Cross-defendant and Appellant.

Davies & Burch and John G. Davies for Defendants, Cross-complainants and Respondents.

WHELAN, J.—Bay Shore Homes, Inc., a corporation (Bay Shore) appeals from a judgment awarding damages to San Diego Trust & Savings Bank, a corporation (Bank), as administrator with will annexed of the last will and testament of Edna C. Brown, deceased, and Elizabeth Tyson, Conservator of the Person and Estate of Mildred E. Wuest, Conservatee; Stan Maykut, named as a cross-defendant by Bank, appeals from the judgment which declared he was not entitled to a real estate commission.

### HISTORY AND BACKGROUND OF THE LITIGATION

On January 27, 1964, an asset of the estate of Edna C. Brown was an undivided one-half interest in a seven-acre tract of unimproved real property at the intersection of Seventieth Street and University Avenue in the City of La Mesa; undivided interests were owned by the heirs and devisee of Richard Wuest, deceased, subject to administration and by Mildred Wuest. When the action was commenced, on February 14, 1966, the estate of Richard Wuest had been distributed to Mildred Wuest, over whose estate a conservatorship had been established.

The seven-acre parcel in January 1964 was zoned as commercial along its 450 feet of street frontage on University Avenue to a depth of 100 feet; the remainder was zoned R-1 for single-family residential units.

Stan Maykut (Maykut), a licensed real estate broker, prior to January 1964 knew from a circular letter from Bank that the parcel was for sale, and had submitted one offer, conditioned upon the offeror's ability to obtain rezoning. That offer was rejected by Bank because of that condition.

On January 27, 1964, Maykut brought to Jerry Lewis, a trust officer of Bank, who had charge of the Brown estate matter, Moss and Amateo, who were respectively the president of Bay Shore and an agent of Bay Shore. On behalf of Bay Shore, Moss presented a written offer to purchase the seven acres for $160,000 with a deposit of $16,000. Moss on his personal credit, had obtained a commitment from the commercial department of Bank for the $16,000, a check therefor being delivered during the meeting.

Before going to Bank, Maykut, Moss and Amateo had lunched together. Maykut had proposed during the luncheon meeting that if the offer were made and accepted his commission of $16,000 would be turned over to Bay Shore to be used in making up the balance of the purchase price; that a rezoning to commercial zone be obtained so that the property zoned for commercial use would have a total depth of 200 feet; that he should be given an exclusive right to sell the commercially zoned property for a period of two years; that Bay Shore obtain financing for construction on the property not zoned for commercial use and from such loan pay Maykut $3,000. The proposal was accepted by Moss for Bay Shore, with the further agreement that if the offer to purchase should be accepted, the agreement between Maykut and Bay Shore would be reduced to writing.

After the meeting with Bank, Maykut and Moss went to the office of Crake, attorney for Moss, where a writing was prepared at Moss' direction and was signed. It did not mention the extent of the property zoned for commercial use or the rezoning plan.

The offer to purchase provides for opening an escrow with Bank's escrow department as agent, and for payment in full into the escrow within six months.

The offer was accepted, a return of sale made, and the sale confirmed with a provision for payment of a commission of $16,000 to Maykut.

It had been Maykut's intention to set about immediately to sell the commercially zoned property, so that the proceeds of such sale could be used as a part of the purchase price of the entire seven acres, a method of payment in which a second escrow for the resale might be used.

No mention was made to Bank of the arrangement between Maykut and Bay Shore for the use of the broker's commission as a part of the purchase price, or of the plan to obtain other

funds by a resale of a part of the property during the escrow period, or of the fact that rezoning was looked to as an element essential to successful completion of the purchase; and Bank did not know of those matters until much later.

Efforts to obtain rezoning of the additional 100 feet for commercial use, and of the remaining some five acres for multiple-unit residential purposes, R-4, were commenced. The application for the additional commercially zoned strip was obtained; the application for rezoning for R-4 use was finally withdrawn.

Bay Shore's plan for use of the property contemplated the R-4 rezoning.

Maykut obtained an offer of American Oil Company for a long-term lease of the corner zoned for commercial use; a commitment for a loan of $65,000 from another bank secured by an assignment of the lease was arranged for; tentative arrangements were made with Bank to obtain approval of a severance of the property to be covered by the lease from the larger parcel and approval of a sale of that severed parcel to another corporation in which Moss was the principal owner which would then give the lease; Bank considered approval of such sale could be obtained for a figure of $60,000, but required as a condition that Maykut waive any claim for a commission on such sale; Maykut refused to do that because of his interest in earning commissions on resale of the commercially zoned property.

Although the open escrow period was extended 45 days beyond the six-month period, Bay Shore did not deposit, and did not have the balance of the purchase price.

Bank obtained an order under section 788, Probate Code, which set aside the order confirming sale to Bay Shore and directed a resale.

A sale was then made and confirmed to a buyer obtained by Bay Shore at the same price and with a commission in the same amount ordered to be paid to another broker.

Before Bay Shore produced the substitute purchaser, Bank told Moss that if Bay Shore obtained such purchaser at the same price it would not be held for damages if the court would approve such arrangement. The probate court refused to approve a release of Bay Shore against liability for damages, and directed Bank to interplead Bay Shore, Maykut and all interested parties as to their rights to the $16,000 deposit.

Before such proceeding in interpleader was commenced, the present action was filed by Bay Shore against Bank and Wuest to recover the $16,000. Those defendants cross-complained against Bay Shore and Maykut, asking for a declaration of rights and duties. In this answer to the cross-complaint Maykut asked for a declaration he was entitled to a commission.

As between Bank and Bay Shore, the cross-complaint sought reimbursement for all loss sustained by it as a result of the breach by Bay Shore.

The trial court denied to Maykut any commission, ordered the return to Bay Shore of the $16,000 less damages sustained by Bank, and found the items of damages to be as follows:

| | | |
|---|---|---|
| ''(a) | Publication on original sale | $56.25 |
| ''(b) | Executor's fees incurred on original sale | 520.00 |
| ''(c) | Attorney's fees incurred on original sale | 510.00 |
| ''(d) | Expended court costs in above action | 54.90 |
| ''(e) | Real property taxes paid | 1,777.96 |
| ''(f) | Reappraisal fees to allow confirmation of subsequent sale | 140.00 |
| ''(g) | Attorneys' fees incurred by defendants in the defense of above action | 585.00 |
| ''(h) | Expenses incurred by defendant-Executors in the above action, other than taxable court costs | 10.30 |
| ''(i) | Costs for cancellation of original Escrow fixed as a reasonable amount by court | 60.00 |
| | ''TOTAL | $3,714.41'' |

### BAY SHORE'S CONTENTIONS

As between Bay Shore and Bank a fundamental question presented is the jurisdiction of the superior court not sitting in probate to award damages against a defaulting purchaser, the sale to whom has been set aside under section 788, Probate Code. Although Bay Shore itself commenced the action, it now challenges the court's jurisdiction to decide all matters in controversy upon a claim that only the court sitting in probate can fix and award the damages mentioned in section 788. Bay Shore contends also that certain of the items of damage were improperly allowed.

*Estate of Williamson,* 150 Cal.App.2d 334 [310 P.2d 77], *Estate of Efird,* 130 Cal.App.2d 227 [278 P.2d 730], and *Estate of Hughes,* 3 Cal.App.2d 551 [40 P.2d 295], are cited

in support of the claim of lack of jurisdiction. All three cases hold the court in probate has jurisdiction to award a commission payable out of the assets of an estate, and *Estate of Hughes, supra,* held that such jurisdiction included jurisdiction to apportion the commission, and that such jurisdiction was exclusive in that court.

*Estate of Williamson, supra,* 150 Cal.App.2d 334, dealt with the award by the probate court of judgment for expenses, including the amount of a broker's commission, in favor of the estate against a defaulting purchaser, to be paid out of the original deposit accompanying the bid.

At the same time that Bay Shore argues that point, it argues elsewhere in its brief that Maykut was not entitled to a commission. Maykut himself makes no claim that the court was without jurisdiction over his claim.

The authorities cited by Bay Shore are to the effect that only the court sitting in probate could award a commission to Maykut payable by the executor. That particular question does not arise on this appeal because the trial court determined that no commission was payable to Maykut.

The trial court, in the exercise of its general jurisdiction, could award against Bay Shore a judgment for those items of expense that already had been passed upon by the court sitting in probate.

The fact that the probate court, in *Williamson, supra,* made the award of damages against the defaulting purchaser does not establish a rule that would deprive the superior court of a jurisdiction it otherwise possessed.

Such jurisdiction exists with regard to a claim by a defaulting purchaser where, at the time such purchaser sues for recovery of a down-payment, there has not yet been a resale. The Supreme Court has said with regard to such a situation: "If, on the other hand, respondent does not resell the property, appellant's right to the return of any part of the down payment will depend on his successfully asserting a claim based on proof that the amount of the down payment exceeded the damages caused by his breach of the contract. [citation] An action on such a claim should be brought in the superior court." (*Estate of Mesner,* 37 Cal.2d 563, 567 [233 P.2d 551].)

Surely, after such a determination in the superior court, it would still be possible for the executor to resell the property. Yet in that case the probate court could no longer exercise its

jurisdiction under section 788 to determine the amount of the deficiency already determined by the superior court.

*Estate of Williamson, supra,* 150 Cal.App.2d 334, recognizes that section 788, Probate Code, establishes a measure of damages different from that provided by section 3307, Civil Code, in making the difference between a lower resale price and the original sale price an item of damage. In the two sales involved here the price was the same.

The Supreme Court, in *Schlyen v. Schlyen,* 43 Cal.2d 361 [273 P.2d 897], made it clear that the jurisdiction of the superior court sitting in probate was not exclusive in an action by an heir of a decedent against a defendant who was the administrator of the estate of the decedent and who claimed ownership of property adversely to the estate.

Where such an action has been brought in the superior court during the pendency of a probate proceeding, it would be proper to demur to the complaint upon the ground there is a prior action (the probate proceeding) pending. Where no demurrer was filed upon such ground, it could not be said the court lacked jurisdiction to determine the issues raised, even though those issues might have been determined in the probate proceeding.

*Baldwin v. Stewart,* 218 Cal. 364 [23 P.2d 283], was an action by a purchaser, to whom sale had been confirmed, to recover a down-payment. The administrator countered seeking specific performance rather than damages. The probate court had earlier denied the purchaser's motion to vacate the sale.

*McCarty v. Wilson,* 184 Cal. 194 [193 P. 578], was an original action for specific performance brought by an executor against a purchaser to whom a sale had been confirmed. Mention is made therein of section 1554, Code of Civil Procedure, which has been replaced by section 788, Probate Code. Concerning it, the court said: "By virtue of the right conferred by section 1554 of the Code of Civil Procedure, the property might have been resold and the present purchaser held responsible if, on the second sale, enough was not realized to pay costs and the amount of the present bid, but that remedy is not exclusive and does not prevent a resort by the executor to a suit for specific performance." (*McCarty v. Wilson,* 184 Cal. 194, 200 [193 P. 578].)

In *Barnes v. Morrison,* 102 Cal.App. 152 [282 P. 986], the administrator sued a defaulting purchaser for rescission and to have a forfeiture declared of the $4,400 bid deposit.

Of the claim that the then existing section 1554, Code of Civil Procedure furnished an exclusive remedy, the court said: "The administrator was entitled to maintain an action to recover possession of the property of the estate and to relieve the estate from the burden of any claim of title on the part of the purchaser or his lessee, and to declare a forfeiture of the money which was paid on account of the purchase price." (Pp. 157-158.)

## MAYKUT'S CONTENTIONS

A simplification of Maykut's arguments is that in submitting Bay Shore as a purchaser he owed no duty to disclose to Bank the arrangement previously made to use his commission as a part of the purchase price; that the existence of that arrangement was immaterial to an acceptance or rejection of the offer; that the court's finding Maykut was not guilty of fraud establishes he had no duty to disclose; that Bank's direction in the escrow for payment of the commission did not contain any condition that it be paid only if the sale were carried out to completion.

A claim made in his opening brief that he did not act as a broker but as a finder or middleman has been withdrawn in his closing brief because of the decision in *Batson* v. *Strehlow*, 68 Cal.2d 662 [68 Cal.Rptr. 589, 441 P.2d 101].

Maykut's lack of right to a commission is established by the fact that he withheld information from his principal that was material on the question of the ability of Bay Shore to purchase on the offered terms. The court has found the information withheld was material, a finding amply supported by the evidence from Maykut's lips.

It is true that Bank accepted the purchaser. Under the general rule when the seller accepts the buyer produced he thereby admits the ability of the purchaser to consummate the sale. (*Malmstedt* v. *Stillwell*, 110 Cal.App. 393, 398 [294 P. 41]; *Edwards* v. *Billow*, 31 Cal.2d 350, 360 [188 P.2d 748]; *Beazell* v. *Kane*, 127 Cal.App.2d 593, 595 [274 P.2d 224].)

To that rule there are certain exceptions, as where, at the time of the execution of the written agreement, it was understood by the parties that the buyers' acceptance of the sellers' offer was subject to the buyers' being able to finance their purchase along the lines required by the agreement. (*Wiseman* v. *Ross*, 202 Cal.App.2d 138, 142 [20 Cal.Rptr. 565].)

A subordinate or qualifying rule based upon some of the exceptions is stated in 12 Am.Jur.2d Brokers, section 206,

pages 949-950: "[I]n order to be entitled to his commission under the above rule, the broker must have acted in good faith and without knowledge of the customer's financial inability."

In support of that qualifying rule, the text-writer cites *Hare* v. *Bauer*, 223 Minn. 285 [26 N.W.2d 359]; *R. A. Poff & Co.* v. *Ottaway*, 191 Va. 779 [62 S.E.2d 865]; *Middle Atlantic Immigration Co.* v. *Ardan*, 115 Va. 148 [78 S.E. 588]; and cases collected in 74 A.L.R.2d 456-457, including *Meyer* v. *Keating Land & Mortg. Co.*, 126 Minn. 409 [148 N.W. 452]; *Parker* v. *West*, 191 Va. 710 [62 S.E.2d 862] (cf. *Welton* v. *Smith*, 77 Cal.App. 201 [246 P. 163]; *Henderson* v. *Vernalis Farming Co.*, 58 Cal.App. 541 [208 P. 982]).

We do not doubt that a defendant vendor, in an action for a broker's commission, may question the financial ability of the vendee whose offer the vendor has accepted in ignorance of the fact that the broker has agreed that his commission will be paid over to the vendee to enable the latter to perform the contract to purchase.

The theory advanced that a different standard as to a broker's duties in the sale of property that requires confirmation in the probate court is rejected. *Batson* v. *Strehlow, supra,* 68 Cal.2d 662, makes it clear that there is no such different standard.

### THE AWARD OF DAMAGES

■ In general, the items of damages allowed are of the general character that have been held recoverable under the Civil Code provisions. (*Allen* v. *Enomoto*, 228 Cal.App.2d 798 [39 Cal.Rptr. 815]; *Pasteur Realty Corp.* v. *La Fleur,* 154 Cal.App.2d 5 [315 P.2d 374].)

The trial court in its oral remarks indicated it was awarding damages according to the measure provided by section 788, Probate Code.

Concerning Maykut's right to a commission, the court found not only that Maykut had failed to disclose a material fact, but also that the agreed commission was to be paid only out of the funds deposited in escrow, of which there were none. In its conclusions of law, the court gave the latter finding as the primary basis for denying a commission.

Bay Shore's failure of performance was, therefore, related to Maykut's right to recover a commission and Bank's resistance to Maykut's claim was in part upon the ground Bay Shore had defaulted in paying money into escrow. We have

no way of knowing whether, if Bay Shore fully performed, Bank would have sought to escape payment of a commission because of Maykut's nondisclosure.

In *Estate of Williamson, supra,* 150 Cal.App.2d 334, the damages allowed and approved on appeal included attorney's fees and executor's fees allowed in the probate proceeding in connection with the first sale, and attorney's fees in resisting the broker's claim to a commission, and in resisting an independent action brought by the defaulting vendee to recover her deposit.

Such an allowance of attorney's fees is not within the general rule stated in *Prentice* v. *North American Title Guar. Corp.,* 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645], as follows: "In the absence of some special agreement, statutory provision, or exceptional circumstance, attorney's fees are to be paid by the party employing the attorney."

However, the award of damages for such fees in the case at bench follows the precedent of *Estate of Williamson, supra,* 150 Cal.App.2d 334. We are not disposed to attempt to establish a contrary rule.

Likewise, we refuse to rule that the trial court was without jurisdiction to make the award because it was not sitting in probate. It would be ridiculous to say that in an action brought by the defaulting vendee to recover a deposit the trial court could charge the plaintiff with some items of damage, such as taxes that accrued between the two sales, but not with others, because such others could be recovered only in the court sitting in probate. A rule requiring such a piece-meal disposition should not receive passing consideration.

Bank has filed a motion that this court hear evidence under section 956a, Code of Civil Procedure, and rule 23(b) of the Rules of Court as to its attorney's fees and other expenses of this appeal, and that this court, as a part of its decision, award such expenses in favor of Bank and against Bay Shore and provide they be deducted by Bank from the $16,000 held by it.

We will go no further than to say Bank may recover its ordinary costs on appeal if properly claimed and in that event may deduct them from the amount of the deposit.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.