[L. A. 23074. In Bank. June 11, 1954.]

ALICE M. KINGSBURY, as Executrix, etc., Plaintiff and Appellant, v. ARCADIA UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

Harold B. Pool for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Deputy County Counsel, for Defendant and Appellant.

SCHAUER, J.—From a judgment rendered by the court, sitting without a jury, awarding additional architect's fees for services rendered by plaintiff's decedent, both parties appeal. Defendant attacks the judgment in its entirety, while plaintiff's appeal is "based solely on that part of the judgment wherein" recovery of interest is denied. For clarity, we shall hereinafter refer to the decedent as the architect.

We have concluded that the judgment should be sustained in all its aspects.

The issue presented is the interpretation of two contracts under which the architect rendered services. Under the first contract, made on December 1, 1943, and hereinafter called the 1943 contract, defendant school district employed the architect in connection with the proposed construction of an intermediate school building. For reasons not reflected in the record, the building was never constructed. Under the terms of the contract, as amended on February 6, 1946, the district paid to the architect a total of $33,000 for his services. Judgment was recovered for an additional $39,000.

Under the second contract, made on August 24, 1948, and hereinafter called the 1948 contract, the district paid to the architect $1,400 for services rendered in connection with the proposed construction of classroom additions which project was also abandoned. Judgment was recovered for an additional $875.

### 1943 Contract

The chief controversy concerns the payment provisions of the 1943 contract. So far as here material that contract reads as follows:

"The District agrees to pay the Architect an amount equal to eight per cent (8%)[1] of the construction cost or costs of the 'Building' . . . when services as hereinafter stipulated have been rendered . . .

"ARTICLE 3. PAYMENTS. Payments to the Architect *on account of* [italics added] his fee shall be made as follows:

"a) Upon completion of the preliminary drawings and specifications . . . an amount of Four Thousand Dollars ($4,000.00).

"b) Upon completion of a formal application to the proper governmental authorities in such form as may be required, on the basis of preliminary sketches and specifications, an additional amount of One Thousand Dollars . . .

"c) Upon completion of the working drawings and specifications, and their acceptance by the District . . . an amount sufficient to increase the payments to a total of Nineteen Thousand Six Hundred Dollars ($19,600.00).

"d) Upon the completion of a formal application to the proper governmental authorities in such form as may be re-

[1]The evidence indicates that with "some variations . . . the standard architects' fee in Southern California is 8% of the cost of the construction."

quired, an amount sufficient to increase the payments to a total of Twenty One Thousand Dollars . . .

"e) Upon the acceptance of the working drawings and specifications by the State Division of Architecture, an amount sufficient to increase the payments to a total of Twenty Two Thousand Four Hundred Dollars ($22,400.00).

"f) Upon completion of fifty percent (50%) of the construction work, an amount sufficient to increase the payments to ninety percent (90%) of the fee based upon the contract cost of the work.

"g) Upon completion of the construction work and its acceptance by the District . . . an amount sufficient to increase the payments to one hundred percent (100%) of the fee based upon the total completed construction cost of the work.

"h) Should the work, as agreed upon, terminate with the services as stipulated under paragraph 'a' of ARTICLE 1 [preparation of preliminary drawings and specifications], then the payments as provided for under paragraph 'a' of ARTICLE 3 shall constitute the complete reimbursement to the Architect . . .

"If, at any future time, the District desires to resume the work [beyond preparation of preliminary drawings and specifications] . . . , then the amount of the payments made under paragraph 'a' of ARTICLE 3 shall be applied against the payments becoming due for the above services as stipulated in paragraphs 'b', 'c', 'd', 'e', 'f', and 'g' of ARTICLE 3. . . .

"ARTICLE 9. ABANDONMENT OF PROJECT AND CANCELLATION OF AGREEMENT. If the District determines at any time, not to proceed with the construction of the 'Building', or after the beginning of the construction work, to suspend indefinitely and/or abandon the construction work and shall require the Architect to suspend the performance of his services, or for reasons stipulated in ARTICLE 8 [inefficiency of Architect] decides to cancel or terminate this AGREEMENT, there shall be due and payable within thirty (30) days after notice has been given in writing to the Architect of said suspension and/or abandonment or decision upon the part of the District to terminate or cancel this AGREEMENT, a sum of money sufficient to *increase* [italics added] the total amount paid to the said Architect on the fee to an amount which shall bear the same proportion to the fee as the amount of services performed and/or provided by the Architect prior to the time of such suspension and/or abandonment or termination of this

AGREEMENT shall bear to the entire services the Architect is required to perform and/or provide . . . Upon payment to the Architect of the amount or amounts provided under this ARTICLE the District may terminate and cancel this AGREEMENT.

"ARTICLE 10. SUPERVISION AND SUPERINTENDENCE OF THE WORK. . . . The Architect and the Engineers engaged by him shall supervise the work of construction covered by the working drawings and specifications prepared . . . within the scope of this AGREEMENT . . ."

In the contract the architect also agreed "to hire the services of a qualified Structional Engineer, and of a Mechanical and Electrical Engineer to collaborate jointly with him in the execution of his professional services."

In February, 1944, defendant accepted the preliminary drawings and specifications prepared by the architect and paid him $4,000 as specified in paragraph (a) of article 3. On February 6, 1946, pursuant to a request by the architect for an amendment to the contract "to allow for an increase of payment since the original contract was estimated on a very low building cost basis," a written amendment to the contract was entered into, under which the payment provided in paragraph (c) of article 3 was increased from $19,600 to $33,000, that provided in paragraph (d) was increased from $21,000 to $34,000, and that provided in paragraph (e) from $22,400 to $35,750.

On June 5, 1946, defendant district accepted the final plans and specifications, prepared by the architect in collaboration with the structural engineer[2] employed by him, and on June 19, 1946, the district paid the architect $29,000, thus bringing the total payments to $33,000 as provided in amended paragraph (c) of article 3.

Nothing further was done by the architect under the contract, and on January 14, 1949, he died. The court found that "subsequent to the year 1947, the exact date of which was not proved at the trial, the defendant abandoned or suspended indefinitely the construction of said building . . . [T]he defendants did not notify plaintiff in writing of such action." It was further found that "$72,000.00 is the amount which would bear the same proportion of the full fee as the

---

[2]The engineer testified that he or his office "personally drew the structural engineering plans" for the project here involved, and consulted with the architect "in reference to the drawing of the other plans. . . . Throughout the entire project."

amount of services performed by the said [architect] Paul Kingsbury prior to such abandonment would bear to the entire services to be performed under said . . . contract as computed in accordance with [article 9] . . ., and said sum is the reasonable value of the services rendered . . .''; that deducting from such $72,000 the $33,000 which ''defendant has paid on account thereof,'' left owing the balance of $39,000 for which judgment was rendered.

■ Defendant contends that the respective lump sum payments specified in article 3 constituted payment in full for each of the services described in connection with such payments, and that therefore the $33,000 received by the architect paid him in full for all services he rendered under the contract. In particular, it relies upon the provision in the last paragraph of article 3 that if the district terminated the work after preparation of preliminary plans, then the payment made for such plans ''shall be applied against the payments becoming due *for the above services* as stipulated in'' (italics added) paragraphs (b) through (g) of article 3. However, as pointed out by plaintiff, the only provision in the contract which would specifically exempt the district from further payment in case of termination of the work is that set forth in paragraph (h) of article 3, wherein it is declared that if the termination occurs with preparation of the preliminary plans, then payment for such plans ''shall constitute the complete reimbursement to the Architect,'' and if it was intended that upon a later termination of the work the progress payments provided in paragraphs (b) through (g) should constitute like ''complete reimbursement to the Architect'' then it is reasonable to assume that the contract would have so provided. ■ Moreover, it is declared in the opening sentence of article 3 that the payments to the architect ''*on account of* his fee shall be made as follows'' (italics added), thus indicating that such payments were not intended as in full for the services rendered at the various stages of the work. ■ Further, the fact that the contract was amended ''to allow for an increase of payment since the original contract was estimated on a very low building cost basis,'' would suggest that the progress payments were related to the total fee, which was to amount to 8 per cent of construction cost, rather than being simple flat fees which would constitute full payment for services rendered at each of the work stages, and, in addition, the provisions of article 9 declare that upon the contingencies therein men-

tioned "there shall be . . . payable within thirty (30) days after notice . . . in writing to the Architect of . . . abandonment or decision . . . to terminate or cancel this AGREEMENT, a sum of money sufficient to *increase* [italics added] the total amount paid" to the proportions of the total fee as specified. Evidence as to the construction cost upon which the 8 per cent fee was to be computed was offered by plaintiff, and the contract contains no provision requiring that, as suggested by defendant, the actual execution of a construction contract was a condition precedent to its liability to pay the proportionately accruing percentages of the fee.

Defendant next urges that the abandonment provisions of article 9 of the contract do not apply because "none of the contingencies specified therein occurred." However, in paragraph V of the cause of action covering the 1943 contract, plaintiff alleged that "late in the year 1948, the exact date of which is not known to plaintiff herein, but is known to the defendant, the defendant abandoned the construction of said building and notified the said Paul Kingsbury of such abandonment," and defendant in its answer expressly admitted "all the allegations" contained in such paragraph. Since one of the "contingencies" set forth in article 9 is a determination by the district "at any time not to proceed with the construction of the 'Building,'" it is apparent that plaintiff alleged and defendant admitted facts establishing that that contingency occurred, and thereby bringing into effect the proportionate payment provisions of article 9. Defendant suggests, also, that "cessation of the architect's services was by mutual agreement," rather than by determination by the district alone and that therefore further payment cannot be claimed. The record is devoid of evidence to support such a suggestion; the fact that minutes of the district's board of trustees indicate that following acceptance by the district of the final plans and specifications on June 5, 1946, the architect was employed to perform other services for the district was not shown to have any bearing whatsoever upon the contract here involved.

Inasmuch as it is evident that the contract and the evidence as hereinabove set forth support the interpretation placed thereon by the trial court this court will adhere to that interpretation. (See *Quader-Kino A.G.* v. *Nebenzal* (1950), 35 Cal.2d 287, 294 [217 P.2d 650]; *Edwards* v. *Billow* (1948), 31 Cal.2d 350, 359 [188 P.2d 748], and cases cited therein.)

■ Defendant further contends, however, that the court erred to its prejudice in excluding evidence of minutes of two meetings of its board of trustees which it urges aid in interpreting the 1943 contract. The minutes of the first of such meetings, of November 17, 1943, state that the architect was authorized "to prepare preliminary plans" for the intermediate school involved in the 1943 contract and "also to submit at its next meeting a contract which would provide for the employment of the services of an architect by steps or stages with the provision that said services could be terminated at the end of any of the steps. . . . " At the second of such meetings, on December 1, 1943, it is stated by the minutes that the architect presented the contract, which "contained the provision requested by the Board, viz: the employment of the services of an architect by steps or stages with the provision that said services could be terminated at the end of any step." The court rejected the evidence with the statement "I don't think there is any ambiguity [in the contract]." Regardless of whether or not the contract be considered as ambiguous with respect to the payment provisions here in controversy, its abandonment clause conforms to the minutes in permitting termination of the architect's services "at the end of any step," and admission of such minutes would not therefore appear to assist in interpretation of the contract.

■ Next, defendant urges that, as pleaded in its answer, action upon the 1943 contract was barred by the four-year limitations statute embodied in subdivision 1 of section 337 of the Code of Civil Procedure. This action was filed in 1951. Therefore, since, as already noted hereinabove, defendant in its answer expressly admitted that it abandoned construction "late in the year 1948," thus making payable thereafter the balance owing to the architect under the abandonment provisions of article 9, it is apparent defendant may not now urge either that the record contains (or that the court erroneously excluded) evidence which would support an inference contrary to both its admission and to the court's finding that the cause of action "is not barred."

■ Finally, defendant urges that the findings that the architect earned $72,000 under the terms of the contract as construed by the court and that therefore $39,000 remains owing, are without support in the evidence. This contention is likewise without merit. Plaintiff's expert witness, a qualified

architect, testified that he had examined the plans prepared by the deceased architect, Mr. Kingsbury, and that 75 per cent ''is a close estimate as to the percentage of the'' architect's work completed when, as here, he has prepared the final drawings and specifications pursuant to a contract which also included supervision of the construction. Further, the court received in the record a stipulation between the parties that plaintiff's experts would testify that the reasonable cost of construction of the building, if constructed, would have been $1,200,000. Since under the contract plaintiff's total fee if his work had been completed would have been 8 per cent of the $1,200,000 (i.e., $96,000), and since 75 per cent thereof (representing the percentage of the work actually ‘completed) amounts to $72,000, of which admittedly only $33,000 had been paid, the court's finding that a balance of $39,000 remains owing is supported by the evidence.[3]

## 1948 Contract

Under the 1948 contract, the architect's total fee for preparing the plans and supervising construction of certain classroom additions, was fixed at $6\frac{1}{2}$ per cent of the construction cost. Payment of the fee was also to be made as the work progressed, as follows:

(a) Upon completion of the preliminary drawings, 1 per cent of the estimated cost of the building.

(b) Upon acceptance of the final plans by defendant, an additional $3\frac{1}{2}$ per cent of the estimated cost.

(c) Upon acceptance of the final plans by the State Division of Architecture, an additional $\frac{1}{2}$ per cent of the estimated cost.

(d) Upon completion of 50 per cent of the construction work, an additional $\frac{1}{2}$ per cent of the actual contract cost of the building.

(e) Upon completion of construction work and its acceptance, the final 1 per cent of the contract cost.

This contract differs from the 1943 contract in one material element: It contains no provision that (as is provided in paragraph h of article 3 of the 1943 contract) ''Should the work . . . terminate with the . . . [preparation of preliminary drawings and specifications] then the payments as provided

---

[3]It may be noted that the structural engineer employed by the architect to assist in preparing the plans here involved, testified that 25 per cent of the total architect's fee is, in the witness' experience, allotted to the structural engineer, and that the reasonable value of the services rendered by the witness on this project was $18,000.

for . . . [such preliminary drawings and specifications] shall constitute the complete reimbursement to the Architect." It does, however, contain an abandonment clause substantially identical with that set forth in article 9 of the 1943 contract and it is under this abandonment clause that plaintiff claims.

The 1948 contract also provided that "Solely for the purpose of determining the payments to the ARCHITECT on account of the services stipulated . . . prior to the letting of the Contract . . . for the construction . . ., the amount of One Hundred and Fourty Thousand Dollars . . . shall be the estimate used as a payment basis."

The architect completed the preliminary "sketches, drawings and specifications" for the subject building. Defendant accepted them and paid the architect $1,400, under paragraph (a) of the payment provisions. Thereafter, as pleaded by plaintiff, expressly admitted by defendant, and found by the court, "defendant abandoned said construction and work thereunder and notified" the architect of the abandonment.

Here again plaintiff's expert witness testified that in preparing the preliminary plans and specifications the architect had completed 25 per cent of his work under the contract. Thus, under the abandonment clause which was applicable by the terms of this contract, and as found by the court, the architect had earned a total of $2,275 (i.e., 25 per cent of 6½ per cent of $140,000), which, after deducting $1,400 already paid by defendant, left owing the $875 for which judgment was rendered. Defendant's attacks on this portion of the judgment have been answered adversely by what has already been said hereinabove with respect to the 1943 contract.

### Plaintiff's Appeal: Interest Prior to Judgment Date

Plaintiff, in reliance upon section 3287 of the Civil Code,[4] urges that the judgment should have included interest from the date of filing of this action. However, since the amount due under the contracts here involved was neither certain, nor capable of being made certain by calculation, except after the production of expert testimony as to both cost of construction (shown by stipulation, as to the 1943

---

[4]Civil Code, section 3287: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

contract) and percentage of total work performed (as to both contracts), it appears that the court was justified in not awarding interest. (*Lineman* v. *Schmid* (1948), 32 Cal.2d 204, 209-213 [195 P.2d 408, 4 A.L.R.2d 1380].) Some indication of the uncertainty of the amount due exists in the fact that during the trial plaintiff amended the complaint with respect to the 1948 contract by reducing from $7,000 to $2,275 the amount alleged as the full fee earned by the architect, and from $5,600 to $875 the sum alleged as the unpaid balance owing. The various cases cited by plaintiff (*Erickson* v. *Stockton etc. R. R. Co.* (1905), 148 Cal. 206 [82 P. 961]; *Olcovich* v. *Grand Trunk Ry. Co.* (1918), 179 Cal. 332 [176 P. 459]; *Engelberg* v. *Sebastiani* (1929), 207 Cal. 727 [279 P. 795]; *Courteney* v. *Standard Box Co.* (1911), 16 Cal.App. 600 [117 P. 778]; *Brandenstein* v. *Jackling* (1929), 99 Cal.App. 438 [278 P. 880]; *Lasky* v. *American Indem. Co.* (1929), 102 Cal.App. 192 [282 P. 974]), turned upon facts differing from those here involved, and no useful purpose would be served by discussing such cases in detail.

For the reasons hereinabove stated the judgment is affirmed.

Edmonds, J., Carter, J., Spence, J., and Bray, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.