[Civ. No. 17294.   First Dist., Div. One.   Apr. 22, 1957.]

Estate of G. F. WILLIAMSON, Deceased. ESTHER LICH-
   TENFELD, Appellant, v. LLOYD A. FREDERICK
   et al., Respondents.

Noland, Hamerly & Etienne and Morton B. Harper for Appellant.

Hudson, Martin, Ferrante & Street, Rosendale, Thomas & Muller and Edson G. Thomas for Respondents.

WOOD (Fred B.), J.—Esther Lichtenfeld and others (hereinafter referred to as Lichtenfeld) signed a deposit receipt whereby they agreed to buy certain real property of the estate for $325,000, making a deposit of $16,750, the balance to be paid within 60 days. The deposit receipt stated that "should the purchaser fail to pay the balance, of said purchase price, or fail to complete the purchase, as herein provided, the amounts paid hereon may, at the option of the seller, be retained as the consideration for the execution, of this agreement by the seller."

The executor when signing as seller stipulated: "I agree to sell subject to confirmation of court the above described property upon the terms and conditions herein stated. I agree to pay said broker [Lloyd A. Frederick Company], employed by me to sell said property, as commission the sum of Sixteen Thousand Two Hundred Fifty Dollars . . . subject to court approval or one-half of the amounts paid hereon should same be forfeited by purchaser. One-half of said amount, however, shall not exceed said commission."

The sale was confirmed by the probate court. The order of confirmation allowed the broker a commission of $16,250 for services as agent in procuring the purchasers.

After the lapse of 60 days without further payment by the purchaser, the executor petitioned the probate court to vacate the sale and to order a resale. Meanwhile, Lichtenfeld petitioned to vacate the sale upon the ground that the bid was induced by alleged false representations of the broker. The court vacated the sale, authorized a resale and instructed the executor to retain the $16,750 deposit until further order of the court, all without prejudice to Lichtenfeld with respect to her petition and without prejudice to the rights of the broker.

The down payment, despite the forfeiture clause of the deposit receipt agreement, is held by the vendor as security pending determination of the amount of his loss. He is not allowed to retain the amount, if any, by which the down payment exceeds the damages caused by the vendee. The retention of such excess would be an unjust enrichment. (*Freedman* v. *Rector, etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1].) It was proper for the court, when vacating the sale to direct the executor to retain the down payment subject to further order of the court and to postpone determination of the rights of Lichtenfeld and of the broker. ''When and if the property is resold the rights of the respective parties to the down payment will be determined. (*Estate of Mesner,* 37 Cal.2d 563, 567 [233 P.2d 551].) If and when a resale is conducted, the vendee will be ''liable to the estate for the deficiency,'' if any, as provided in section 788 of the Probate Code. The executor ''is entitled to retain the down payment as security for . . . [the defaulting purchaser's] . . . obligation until the extent thereof is determined.'' (Same, p. 567.)

The property was later resold to other purchasers at the same price, $325,000. When confirming this sale the court allowed a broker's commission of $16,250. The amount realized on the resale obviously did ''not cover the bid and the expenses of the previous sale.'' (Prob. Code, § 788.)

Later, after hearing petitions of the executor and the broker and Lichtenfeld's petition above-mentioned, the probate court found against Lichtenfeld in respect to her claim that the purchasers were fraudulently induced to buy, and ordered disposition of the $16,750 deposit as follows: (1) payment of a commission ($8,125) to the broker who procured the first

sale, (2) a $500 fee to the executor and a $1,500 fee to its attorney for certain extraordinary services rendered the estate,* and (3) $360.35 in connection with the first sale, all of which the court found were "expenses of the previous sale within the meaning of section 788 of the Probate Code"; and (4) that the residue ($6,264.65) be paid to Lichtenfeld.

Lichtenfeld has appealed, claiming the entire $16,750 should have been awarded her as purchaser, save only (a) publication costs relative to notice of the first sale and reappraisal fee if a subsequent appraisal was necessary for the subsequent sale, and (b) reasonable compensation for the services of the executor and its attorney in preparing the notice of the first sale and presenting the petition for confirmation of that sale.

Concerning the item of $360.35, appellant has not furnished a record which shows the specific purposes for which the expenditures were made, nor has she in her briefs indicated any thereof. Accordingly, there is no basis for disallowance of that item by a reviewing court.

This leaves for consideration the question whether the trial court was correct in treating the broker's fee and the compensation for all of the indicated services of the executor and its attorney as "expenses of the previous sale" within the meaning of that term as used in section 788 of the Probate Code.†

---

*It appears from the court's findings (made by reference to those allegations of the executor's petition which the court found to be true) that the $500 award to the executor and the $1,500 award to its attorneys were compensation for services rendered by them (1) in relation to the execution of the deposit receipt agreement with Lichtenfeld, the reception of her bid, and the proceeding for confirmation of that sale, (2) successful resistance to an independent action brought in the superior court by Lichtenfeld to rescind the sale and recover the deposit, presenting therein a general demurrer which was sustained, (3) successful institution and prosecution of a proceeding in the probate court to vacate the sale to Lichtenfeld, and (4) the preparation and filing, in the probate court, of answers to Lichtenfeld's petition therein for rescission and the broker's petition for payment of commission in procuring Lichtenfeld as a purchaser.

Clearly, this did not include compensation for the services of the executor or of its attorney in negotiating, obtaining confirmation of or consummating the second sale, nor for their participation in the subsequent hearing which resulted in the order appealed from.

†Appellant does not question the reasonableness of the amount allowed for services of the executor or the attorney. She does claim that some of those services bear no relation to the "expenses" of the sale to her and that because of the lump sum allowance this portion of the order must be reversed.

She also claims that the estate is not obligated to pay the broker any commission; therefore, there is nothing in that regard chargeable to her as an expense of the sale to her.

(1) *Did the trial court erroneously find and conclude that all of the compensation of the executor and its attorney here involved was an expense of the sale to Lichtenfeld?*

The answer turns on the meaning of "expenses" as used in section 788 of the Probate Code: "If the amount realized on such resale does not cover the bid and the expenses of the previous sale, the defaulting purchaser at such previous sale is liable to the estate for the deficiency."

This measure of damages differs from that which obtains in the absence of a resale under section 788, which would be the amount, if any, by which the sale price exceeds the value of the property at the time of the breach, plus expenses (in addition to those the vendor would have incurred if the transaction had been consummated) made necessary by the vendee's breach. (*Estate of Mesner, supra,* 37 Cal.2d 563, 567; *Royer* v. *Carter,* 37 Cal.2d 544, 549-551 [233 P.2d 539]; *Freedman* v. *Rector, etc. of St. Matthias Parish,* 37 Cal.2d 16, 20-23 [230 P.2d 629, 31 A.L.R.2d 1].) In short, section 788 substitutes the amount realized upon the second sale for the value at the time of the breach, and the expenses of the first sale for expenses made necessary by the purchaser's breach.

A purchaser doing business with a probate estate does so in contemplation of this measure of damages just as if the provisions of section 788 were typed into the contract of sale.

The purpose of this measure of damages seems clearly to be that of making the estate whole, of preventing any loss to the estate when the purchaser defaults and there is a resale. This is accomplished by using the sale price (instead of the value at the time of the breach) as the yardstick. The estate is not subjected to the hazards of a fluctuating market. Even if the value at the time of the breach equals or exceeds the original sale price and the resale (taking place several months or a year or more later) produces considerably less, the defaulting purchaser makes good the difference between the two sales prices.

So, when the Legislature said the estate will absorb the expenses of the second sale and recoup the expenses of the first sale, it must have intended to include in the latter all reasonable expenses attendant upon the first sale, including those made necessary by the purchaser's default, the defense of litigation brought by him to rescind and the expense of vacating the sale, not limited to the cost to the estate of the mere making of that sale. The need to resist Lichtenfeld's rescission suit and her petition in probate to vacate, is obvious and

340

compelling. If not successfully resisted no ''expense'' of any kind would have been recoverable by the estate.

▮ Resistance to the broker's petition for the allowance of a commission, appears to be in the same category. Lichtenfeld had filed her petition to vacate the sale and for return of the entire deposit, predicated upon asserted misrepresentations of the broker. The broker of course had a justiciable interest in the matter. (*Estate of Efird*, 130 Cal.App.2d 227, 229-230 [278 P.2d 730].) He petitioned for a commission of $16,250 or of $8,125, as the court might determine, and sought to enforce payment out of the deposit ''or otherwise.'' The proceeding initiated by his petition well could have borne such a relation to the purchaser's default that the expense to the estate of preparing an answer to his petition would be an ''expense of the previous sale.'' Lichtenfeld, who has the burden as appellant, has failed to show how or why that is not so. Accordingly, there is no basis for us to disturb the trial court's finding as to this type of expenditure.

There is some similarity between the ''expenses of the previous sale'' (§ 788) in case of a resale and expenses made necessary by a vendee's breach when there is no resale. In the latter case a liberal rule applies. For example, in *Major-Blakeney Corp.* v. *Jenkins*, 121 Cal.App.2d 325, 337-338 [263 P.2d 655], it was said that the trial ''court was entitled to take into consideration the fact that the land was off the market for almost a year, that no interest had been paid, that added taxes fell due, and similar factors. It cannot be said that defendants were unjustly enriched by pocketing the $1,000 down payment . . .'' In *Mathews* v. *MacArthur*, 119 Cal.App. 2d 196 [258 P.2d 1068], the trial court allowed the vendor the difference between the contract value and the amount obtained upon a resale (which latter was treated as evidence of the value of the property at the time of the breach, in the absence of evidence of a declining market) and deducted from the resale price the sum of $1,800 expended by the vendor in repairs to the building subsequent to the contract of sale. ''In estimating the damages caused by appellant's breach on the basis of the resale price it was proper to take into consideration that the price paid reflected an increase in the value through this expenditure for repairs and improvements. If appellant had completed the contract as agreed those repairs would have been a burden on him alone. No reason is given why they should not be deducted from the resale price.'' (P. 198. See also *Petersen* v. *Ridenour*, 135 Cal.App.2d 720, 725 [287 P.2d 848].)

We conclude that "expenses of the previous sale" in this case properly included the expense to the estate of the fees of $500 and $1,500 respectively awarded by the court for services of the executor and its attorney.

Perhaps a word should be said about attorney fees. Normally, one party can not recover from an adverse party in an action for fees paid or payable to his own attorney for services rendered in that action. (Code Civ. Proc., § 1021; *Woodward* v. *Bruner*, 104 Cal.App.2d 83 [230 P.2d 861].) That is so "in the absence of a special agreement, special statutory provision, or exceptional circumstances." (*Estate of Reade*, 31 Cal.2d 669, 671 [191 P.2d 745].) Here we have a special statutory provision, section 788 of the Probate Code, which, as we have seen, provides for recoupment by the estate of such attorney and executor fees as reasonably may be deemed "expenses of the previous sale."

We are not without precedent. There is considerable similarity to section 539 of the Code of Civil Procedure which requires an attaching plaintiff to give bond that he will "pay all costs that may be awarded the defendant and all damages which he may sustain by reason of the attachment." Under that clause a defendant may recover reasonable counsel fees incurred in successfully defending the action to the extent that those fees are for services that relate to the attachment. (*Soule* v. *United States F. & G. Co.*, 82 Cal.App. 572 [255 P. 886]; *Reachi* v. *National Auto. & Cas. Ins. Co.*, 37 Cal.2d 808 [236 P.2d 151].)

Similarly, section 529 of the Code of Civil Procedure requires the applicant for an injunction to give bond that he will "pay to the party enjoined such damages, . . . as such party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled thereto." "Damages" as there used include reasonable counsel fees paid an attorney for his services in obtaining a dissolution of the injunction. (*Mason* v. *United States F. & G. Co.*, 60 Cal.App.2d 587 [141 P.2d 475].)

In such and similar types of cases attorney fees and other reasonable items of expense are recoverable as "damages," not as costs. (*Reachi* v. *National Auto & Cas. Ins. Co., supra*, 37 Cal. 808. See also 14 Cal.Jur.2d 724-731, Damages, §§ 104-110.)

(2) *Was the award to the broker, out of the moneys on deposit, erroneous?*

No one doubts that the amount of the legal obligation of

an estate to pay a broker a commission for procuring a purchaser, would be an "expense" of the resulting sale.*

Whether there is here such an obligation depends largely upon the meaning properly to be ascribed to section 760 of the Probate Code. It sanctions a written contract by an executor with a bona fide agent "to secure a purchaser for any real . . . property of the estate." The contract shall provide for the payment of a commission to such agent "out of the proceeds of a sale to any purchaser secured by him." The amount of commission "must be fixed and allowed by the court upon confirmation of the sale." When "said sale is confirmed to such purchaser, such contract shall be binding and valid as against the estate for the amount so allowed by the court."

Section 760 concludes with this qualifying statement: "By the execution of any such contract no personal liability shall attach to the executor . . ., and no liability of any kind shall be incurred by the estate unless an actual sale is made and confirmed by the court."

Here, all of the requirements of this statute were met, if there was an "actual sale." The requirement that such a commission be paid "out of the proceeds of" the sale is, in effect, read into the contract. (*Estate of Mitchell*, 20 Cal.2d 48, 50-52 [123 P.2d 503]; *Estate of Efird, supra*, 130 Cal.App. 2d 227, 230.)

The words "actual sale," if they stood alone, might mean "sale" in the primary sense of a "transfer of the property in a thing for a price in money," a transaction in which title is transferred for a price. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 339 [163 P.2d 869, 165 A.L.R. 621]. See also 22 Cal.Jur. 903, Sales, § 2; 46 Am.Jur. 194, Sales, § 2; and cases collected in 2 Words & Phrases 467, under "Actual Sale" and "Actual Purchase or Sale.") If that be the meaning of this term as used in section 760, there was no sale here and no liability to pay a commission, for title did not pass.

But that is not its meaning. The complete expression is "unless an actual sale is made and confirmed by the court." Confirmation normally precedes the passing of title. Except in the limited types of cases specified in sections 770 and 771

*" 'A demand of a real estate agent, employed to sell real property belonging to an estate, is a claim which comes under the head of expense in the care, management and settlement of the estate, and of such claims the court, sitting in probate, has complete and exclusive jurisdiction.' " (*Estate of Efird, supra*, 130 Cal.App.2d 227, 230.)

of the code (such as perishables and stocks and bonds) "all sales of property must be reported to the court and confirmed by the court before the title to the property passes." (Prob. Code, § 755.) In the instant case the sale when confirmed gave the purchaser 60 days to complete his payments and then take title.

A contract of sale when confirmed by the probate court is enforceable by the estate (*McCarty* v. *Wilson,* 184 Cal. 194 [193 P. 578]; *Baldwin* v. *Stewart,* 218 Cal. 364 [23 P.2d 283]; 11B Cal.Jur. 134, § 740) and by the purchaser (11B Cal.Jur., 134-135, § 741, and 162, § 765).

The very predicate of the resale provisions of section 788 is a "sale" which has been confirmed and with the terms of which the purchaser neglects or refuses to comply. Also, after it is vacated and a resale is effected it is still referred to as a sale, the "previous sale."

The Supreme Court in *Estate of Rule,* 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319], expressed this concept quite pointedly. When interpreting section 760 it emphasized (by italicizing) the expressions " *'when said sale is confirmed to such purchaser, such contract shall be binding and valid* as against the estate . . .' " and " ' [b]*y the execution of any such contract no personal liability shall attach to the executor . . ., and no liability of any kind shall be incurred by the estate unless an actual sale is made and confirmed by the court,'* " saying that the latter expression "clearly indicates that in the contemplation of the statute the sale is not regarded as 'made' unless and until it is confirmed by the court. Hence, strictly speaking, the purchaser cannot be regarded as 'secured' until the sale has been confirmed, nor, by the other italicized language of the section, is the contract valid or binding for any purpose unless and until the sale is confirmed." (Pp. 9-10.) It would seem automatically to follow that when it is confirmed and thereby becomes binding that it is an "actual sale," whether title passes concurrently or subsequently.

Lichtenfeld attaches undue significance to some things said in *Wilson* v. *Fleming,* 106 Cal.App. 542 [289 P. 658], particularly a statement to the effect that there can be no "actual sale" until title has passed to the purchaser. The court assigned several grounds for its decision. The principal ground, as we read the opinion, was that by his complaint plaintiff therein sought to recover a commission based upon a contract to pay it in any event, whether there were "proceeds

344

of the sale" or not. Said the court: "Plaintiff throughout his complaint, . . . alleges that the payment of the commission in question was never at any time or in any manner dependent upon whether anything was paid at all by the purchaser, but that the actual agreement was that the commission was to be paid 'in any event.' " (P. 547.) This, the court held, was not the kind of contract-for-commission which the law sanctioned. Accordingly, we do not deem what the court additionally said about an "actual sale," as pivotally significant. Nor do we attach special significance (as Lichtenfeld would have us do) to the reference to the Wilson case which appears in *Estate of Rule, supra,* 25 Cal.2d 1, at page 16; at least, not as a holding by the Supreme Court that title *must* pass before there is an actual sale, particularly in view of the statement quoted above, made by the Supreme Court in the Rule case, and the further statement that the provisions of the Probate Code "are to be liberally construed with a view to effect its objects and to promote justice" (p. 16), a rule of interpretation which the court specifically applied in the Rule case.

The contention is made that because this contract of sale was terminated and not fully consummated, there were no "proceeds" of sale out of which to pay the broker his commission; hence, under 760 of the Probate Code, the estate has no obligation to pay the broker any fee and, accordingly, has no "expense" in that regard to charge to the defaulting purchaser. We do not so view it. But for the limitations of the probate law the broker would have "earned" his commission when the vendor and vendee " 'executed a binding written agreement between them upon the terms provided in the contract of employment of the broker . . .' " (*Lipton* v. *Johansen,* 105 Cal.App.2d 363, 369 [233 P.2d 648].) In probate, this rule has these limitations: (1) the broker's contract shall provide for payment of a commission to him "out of the proceeds of a sale"; (2) the amount of the commission must be fixed and allowed by the court upon confirmation of the sale; (3) when such a sale is "confirmed to such purchaser, such contract [with the broker] shall be binding and valid as against the estate for the amount so allowed." (Prob. Code, § 760.) Here, the purchaser made a deposit of $16,750 and agreed that it, plus any additional amounts she might pay, be retained by the executor in case of the purchaser's default. The purchaser has shown us no reason why that did not token an intent of the parties

that such moneys were in such a case to be used to defray the executor's expenses incident to the sale, including the payment of the broker's fee; especially in view of the fact that the executor and the broker contracted that the latter's fee would be well within the amount of moneys the purchaser might forfeit in case of a forfeiture.

When the sale to Lichtenfeld was confirmed the court fixed the broker's commission at $16,250. It said nothing about reducing or limiting it in the event of a default by the purchaser. When, later, the court vacated that sale and ordered a resale, it had before it a petition by the purchaser to void the sale for alleged fraudulent representations of the broker. It was quite appropriate, therefore, to reserve jurisdiction to determine such issues in due course, including the rights of the broker. When that determination was made (adversely to the claims of the purchaser) the court had before it a request by the broker to confirm his fee at the amount originally fixed or at half that amount. The court chose the latter figure. We see no lack of authority of the court to act under such circumstances. (See *Estate of Efird*, *supra*, 130 Cal.App.2d 227, 229-230.)

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.