[Civ. No. 5469. Fourth Dist. Sept. 19, 1957.]

PASTEUR REALTY CORPORATION (a Corporation), Plaintiff and Appellant, v. HAROLD LA FLEUR et al., Defendants and Appellants.

Oakes & Horton for Plaintiff and Appellant.

Donnelley, MacNulty & Butler for Defendants and Appellants.

GRIFFIN, Acting P. J.—The president of plaintiff corporation, Mr. Peron, and his wife, who owned the stock in said plaintiff corporation, sold their New York property. He came to California on March 9th, 1955. In response to an advertisement he contacted defendant Voltaire Realty Company, agent for defendant Harold La Fleur and wife, owners and occupants of the Sands Motel Apartments in Ocean Beach, consisting of 21 units. The agent, with Peron, inspected the premises. Plaintiff offered defendants $120,000 for the property, but this was refused. Peron then offered to pay $122,500. After the agent pictured the possible income and the development of the Mission Bay project, plaintiff's offer was accepted by defendants on certain specified terms set forth in an agreement to purchase, and in an escrow instruction prepared on March 12, 1955. It was signed by Alain Peron, as president of plaintiff corporation, and by the La Fleurs. Twenty-three thousand dollars was turned over to defendants' agent, who is still holding it for the La Fleurs. Thereupon, on the arrival of Mrs. Peron in Ocean Beach, and after inspection of the premises and the records, they claimed that the property and its income had been misrepresented to them. Thereafter, they sent the sellers and the Loma Escrow Company notice of rescission of the contract, claiming fraud, false representations, and indicated an offer to restore.

On April 28th, 1955, they instituted this action alleging false representation of income and bay improvements and asked for the return of the documents signed and the money paid. The complaint was later amended setting forth the claimed misrepresentations in more detail. After denial of the allegations of the complaint, by cross-complaint, the La Fleurs sought specific performance of the contract of sale and asked that in the event of the denial of specific performance judgment be entered in their favor for damages in the amount of $35,000, or the right to retain the $23,000 deposit as liquidated damages. During the trial, by stipulation, an

amendment to the first amended complaint was filed alleging that the Voltaire Realty Company became indebted to plaintiff for $23,000 for money had and received, and judgment was sought against it for that sum. The cross-complaint was amended alleging that plaintiff paid Voltaire Realty Company, as agent for the vendors, $23,000, as part payment for the property; that the sellers became indebted to the agent for $3,750 for commission; that in case of denial of specific performance the sellers should be entitled to retain the $23,000 as damages, and sought an order quieting sellers' title to said money.

After trial, the court found generally that the $23,000 was not deposited in escrow, as originally alleged, but was left in the possession of the sellers' agent, Voltaire Realty Company; that it was not true that sellers and their agents misrepresented the income from the units but stated the opinions given were based on future events and were not relied upon by the purchaser; that it is not true that Voltaire Realty Company became indebted to plaintiff for $23,000 for monies had and received; that the purchaser refused to consummate the sale and sellers were ready, able and willing to do so; that the actual value of the property was $113,250; that plaintiff's breach of the agreement to purchase was unjustified and that by reason thereof cross-complainants were damaged in the sum of $9,250; that the sellers became indebted to the agent, Voltaire Realty Company, in the sum of $3,750, but since no issue was framed for the recovery by Voltaire Realty Company of such commission it could take nothing for its commission in this proceeding as against any party to the action; that due to the length of time between the execution of the agreement of sale and the trial of the action, and due to the facts found, it would be inequitable to enforce specific performance; that plaintiff is entitled to the return of $13,750 from the $23,000 down payment. Cross-complainants were allowed to retain the balance of $9,250. Title to the real property was quieted in favor of cross-complainants who appealed from that part of the judgment ordering them to return to plaintiff $13,750, and only allowing them to retain $9,250.

Plaintiff appeals from the entire judgment. In its brief it concedes the evidence on the question of its right to rescind was in conflict and that the findings of the trial court in this respect were supported. Plaintiff first contends the award of damages to cross-complainants cannot be sustained because

the only valuation expert called by them testified the property was worth more than the contract price, and accordingly no damage was suffered by them; that they abandoned their claim for damages at the close of their own case by moving to dismiss that claimed cause of action, since the motion was granted by the trial judge; and that the judgment of dismissal of that cause of action was res judicata on that issue, citing section 581, subdivision 4, of the Code of Civil Procedure and *Fisher* v. *Eckert*, 94 Cal.App.2d 890 [212 P.2d 64]; that accordingly the cross-complaint does not permit an award of damages; and that the measure of damages was not determined according to Civil Code, section 3307.

The pleadings, as finally framed, are somewhat confusing in this respect. The original complaint filed by plaintiff, and as amended, was an action in equity seeking rescission and restoration of money paid to defendants through its agent. The last amendment contained the common count of money had and received directed against Voltaire Realty Company. Defendants' cross-complaint and amended cross-complaint sought equitable relief by seeking specific performance of the contract. In a second count it recited that if this relief was not allowable then, in the alternative, they sought damages in the sum of $35,000. In the third count they sought $23,000 as "agreed and liquidated damages." The amended cross-complaint omitted the prayer for damages as set forth in counts two and three but substituted as an alternative, a prayer that the court determine the rights of the respective parties to the $23,000, and asked that the cross-complainants be allowed to retain the whole thereof. No mention is made respecting damages. However, the court did find, by virtue of the breach, that cross-complainants were damaged in the sum of $9,250, and in the equitable adjustment of the action, by judgment, allowed cross-complainants to "retain" from the $23,000 the sum of $9,250.

█ Under the facts of this case cross-complainants had no absolute right to retain the $23,000 as "agreed" or "liquidated" damages. It was determined in *Freedman* v. *Rector, Wardens & V. of St. Mathias Parish*, 37 Cal.2d 16, 23 [230 P.2d 629, 31 A.L.R.2d 1], that:

"The provision of the contract providing that on plaintiff's default defendant could retain the down payment cannot be enforced as a valid clause providing for liquidated damages. Although such a provision in a contract for the sale of real property is presumptively valid, if the down payment is

reasonable in amount . . . when . . . the evidence establishes that it would not 'be impracticable or extremely difficult to fix the actual damages' . . . such a provision may not be enforced as one for liquidated damages." And that " 'A penalty need not take the form of a stipulated fixed sum; any provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.' " And "to deny the remedy of restitution because a breach is wilful would create an anomolous situation when considered with section 3369 of the Civil Code." (Citing *Barkis* v. *Scott*, 34 Cal.2d 116 [208 P.2d 367], holding that "Section 3275 presupposes that the party seeking relief is in default, and in order to secure relief under its terms it is necessary for him to plead and prove facts that will justify its application.")

In *Petersen* v. *Ridenour*, 135 Cal.App.2d 720 [287 P.2d 848], it was held that a quiet title action is equitable in nature and equity cannot enforce a penalty or forfeiture, but in the absence of a showing that the vendor instituting such action against the defaulting purchaser will realize more than the benefits of his bargain, he may quiet his title to the property without refunding any part of the price paid, and the burden of proof rests on a defaulting purchaser to prove that the payments made by him exceed the vendor's damages. The pleadings and evidence in the instant case were sufficient to support the adjustment made. The claim of res judicata is inapplicable.

Just what items the court considered in making this adjustment is not set forth. Whether it included the claimed real estate commission of $3,750 for which cross-complainants may have become liable is not clear. There is evidence that if the contract had been carried out by plaintiff and the full sale price of $122,500 had been paid, cross-complainants would have made a gross profit of $9,250 over its true value of $113,250. This might well have been the basis of the court's finding of damages. (*Royer* v. *Carter*, 37 Cal.2d 544 [233 P.2d 539].) ▪ The purchase agreement provided that the sellers would pay for the real estate agent's commission "in the sum of $———— - or ½ of deposit above mentioned in case same is forfeited by purchaser." Although there is a finding that cross-complainants became indebted to said agent for $3,750, we must assume, in support of the judgment, that this sum might well have been included, and that it was con-

sidered in making the adjustment. It may be further noted that the Voltaire Realty Company was a party to the action, participated in the trial, and there made no claim for a commission.

The original pleading alleged that the $23,000 was paid into escrow. The Loma Escrow Company was dismissed from the action upon the stipulation that defendants' agent, Voltaire Realty Company, held the money in trust pending the outcome of this litigation. The escrow agent and realty agent occupied the same office.

Defendants make the claim that a different result follows if the payment made is a down payment made to the sellers and not a deposit in escrow, arguing that in a payment into escrow title to the money remains in the vendees until the conditions are performed, and that where the money is paid to a vendor or his agent, title passes to the vendor, citing *Norris* v. *San Mateo County Title Co.*, 37 Cal.2d 269 [231 P.2d 493]. Under the pleadings, the stipulations, the evidence and the findings, such a fine distinction would not affect the ultimate judgment adjusting the equities between the parties here involved.

We have sufficiently disposed of defendants' claim that the additional sum of $3,750 real estate agent's fees should have been considered by the court as additional damages.

■ The decision of *Royer* v. *Carter, supra,* page 550, completely answers plaintiff's claim that under section 3307 of the Civil Code the wrong measure of damages was invoked. It there states, at page 550, that "When such additional expenses are the natural consequence of the breach, they may be recovered in addition to those provided for in section 3307."

Judgment affirmed.

Mussell, J., concurred.