[L. A. No. 26266.   In Bank.   Aug. 28, 1961.]

S. D. CAPLAN et al., Plaintiffs and Appellants, v. KENNETH O. SCHROEDER et al., Defendants and Appellants.

Leon J. Alexander and Alexander, Inman & Fine for Plaintiffs and Appellants.

Carl C. Cowles, Rimel & Johnston and Fred D. Johnston for Defendants and Appellants.

TRAYNOR, J.—On July 12, 1955, plaintiffs agreed to buy and defendants agreed to sell approximately 147 acres of land in Orange County for $2,200 an acre or approximately $323,000. Pursuant to the contract plaintiffs delivered to defendants outside of escrow their promissory note for $15,000, payable with interest in two equal installments due in three months and six months from the date of the agreement. The parties agreed that an escrow should be opened within ten days and closed within six months and that plaintiffs would pay an additional $85,000 in cash, assume existing notes secured by deeds of trust for approximately $80,000, and execute a note secured by a new deed of trust for the balance. Plaintiffs paid the $15,000 note with interest when due but refused to complete the purchase, and defendants terminated the escrow. Within the following year defendants sold the property to others at a somewhat higher price than they had agreed to sell it to plaintiffs.

In January 1958 plaintiffs brought this action to recover the amount they had paid plus damages, alleging that defendants had breached the contract. In the event that the court should find that plaintiffs breached the contract, they sought

restitution of the amount paid less any damages suffered by defendants. Before trial it was stipulated that plaintiffs willfully breached the contract and that at all material times the value of the property was equal to the contract price of $2,200 per acre. The trial court concluded that plaintiffs were entitled to restitution of the amount paid less certain expenses incurred by defendants and entered judgment for the difference of $13,032.75 plus interests and costs. Both plaintiffs and defendants appeal.

Plaintiffs contend that the trial court erred in allowing defendants a deduction for the broker's fee paid by them and in awarding interest from the date the action was brought instead of from the date the escrow was terminated. Defendants contend that the trial court erred in holding invalid the contract provision permitting them to retain the amount paid.

The contract provided that plaintiffs ''as BUYERS will make, execute and deliver to the SELLERS their promissory note for Fifteen Thousand Dollars ($15,000.00) payable Seven Thousand Five Hundred Dollars ($7,500.00) on or before three months after the date of this Agreement, and the balance of Seven Thousand Five Hundred Dollars ($7,500.00) on or before six months from and after the date of this Agreement, with interest from the date of this Agreement until paid at the rate of five per cent (5%) per annum. This note shall be delivered to the SELLERS outside of escrow and is given to SELLERS as consideration for SELLERS entering into this Agreement, but when said note is paid according to the tenor thereof the BUYERS shall have credit for the principal sum thereof, to wit: $15,000.00, against the purchase price of the said real property, if the sale of said real property is consummated, at the time and in the manner herein set forth. If said purchase and sale is not so consummated because of a default on the part of the SELLERS, then said note shall be returned to the BUYERS, or if any money has been paid on said note the sum paid shall be refunded to the BUYERS; and if the SELLERS' default is wilful SELLERS will pay BUYERS the sum of $5,000.00 as liquidated damages. If, however, the sale is not consummated by reason of some default of the BUYERS, said note and/or the moneys received in payment thereof shall be retained and collected by the SELLERS as agreed consideration for entering into this Agreement.''

Defendants contend that under this provision the execution and payment of the note were separate consideration for their entering into the agreement, and that since they

did so, plaintiffs have received what they bargained for and are not entitled to restitution of any part of the payments. We cannot agree with this contention. Entering into an agreement is meaningless except as rights and obligations flow therefrom, and we must therefore look to those rights and obligations to determine whether an initial payment is supported by separate consideration. In the present case plaintiffs did not secure an option to purchase or not as they pleased; they entered into a mutually binding contract that could be specifically enforced against them, and they executed and paid the note in part performance of that contract. Under these circumstances the "mere recitation that the right of the seller to retain this deposit was in consideration for executing this agreement, is insufficient to establish meaningful separate consideration." (*Rodriguez* v. *Barnett,* 52 Cal.2d 154, 160 [338 P.2d 907]; see also *Estate of Williamson,* 150 Cal.App.2d 334, 336-337 [310 P.2d 77].) Nor does the evidence and finding that the parties meant what they said by their recitation establish "meaningful separate consideration," for defendants executed the agreement, not in exchange for the note and its payment alone, but in consideration of plaintiffs' agreement to purchase the property on all of the terms stated.

Since it is only because of plaintiffs' default in completing the purchase that defendants are given the right under the agreement to retain the payments made on the note, plaintiffs correctly contend that the provision giving that right is one "by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof." (Civ. Code, § 1670.) It is therefore void unless it falls within the exception stated in Civil Code section 1671.[1]

In *Freedman* v. *Rector, Wardens etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], we held that even a willfully defaulting vendee may recover the excess of his part payments over the damages caused by his breach. (See also *Estate of Mesner,* 37 Cal.2d 563, 567 [233 P.2d 551]; *Bird* v. *Kenworthy,* 43 Cal.2d 656, 659-660 [277 P.2d 1]; *Estate of Williamson,* 150 Cal.App.2d 334, 337 [310 P.2d 77]; *Pasteur Realty Corp.* v. *LaFleur,* 154 Cal.App.2d 5, 9 [315 P.2d 374].) We also pointed out that a provision for

---

[1] "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

the retention of a reasonable down payment as liquidated damages in a contract for the sale of real property is presumptively valid. (37 Cal.2d at p. 23; see also *Wright v. Rodgers,* 198 Cal. 137, 142-143 [243 P. 866]; Civ. Code, § 3387; 5 Corbin on Contracts, § 1133, pp. 602-603.) In the present case, however, defendants did not seek to sustain the provision for the retention of the note in the trial court on the theory that it was a provision for liquidated damages, and they have not advanced that theory on appeal. ▮▮ Moreover, the evidence does not establish as a matter of law that the provision was one for liquidated damages. Although the labels adopted by the parties are not conclusive (*Dyer Bros. Golden West Iron Works v. Central Iron Works,* 182 Cal. 588, 592 [189 P. 445]; *Smith v. Royal Mfg. Co.,* 185 Cal.App.2d 315, 323 [8 Cal.Rptr. 417]; *Folden v. Lobrovich,* 171 Cal.App.2d 627, 629 [341 P.2d 368]; *Hanlon Drydock etc. Co. v. G. W. McNear, Inc.,* 70 Cal.App. 204, 214 [232 P. 1002]; see 5 Corbin on Contracts, § 1133, pp. 602-603), it is significant that the parties expressly provided for liquidated damages in the event of a breach by defendants but did not so describe the right to retain the note in the event of a breach by plaintiffs. Nor did they provide that the retention and collection of the note should be the exclusive remedy in damages against plaintiffs. (*Cf., Royer v. Carter,* 37 Cal.2d 544, 546-547 [233 P.2d 539]; see Hetland, *California Land Contract,* 48 Cal.L.Rev. 729, 744-745; 5 Corbin on Contracts, § 1061, p. 297.) ▮ It is true that the amount of the note was less than 5 percent of the purchase price and that there was evidence that at the time the contract was made "it would be impracticable or extremely difficult to fix the actual damage." (Civ. Code, § 1671; see *McCarthy v. Tally,* 46 Cal.2d 577, 586 [297 P.2d 981]; *Chastain v. Belmont,* 43 Cal.2d 45, 58 [271 P.2d 498]; *Better Food Markets v. American Dist. Tel. Co.,* 40 Cal.2d 179, 185 [253 P.2d 10, 42 A.L.R.2d 580].) There was other evidence, however, that the value of the land was expected to increase with the passage of time. It might be inferred therefrom that the parties did not contemplate that defendants would suffer any damages if they were subsequently required to resell their property and that therefore the amount of the note did not represent a reasonable endeavor to estimate the probable damages in the event of plaintiffs' breach. (See *McCarthy v. Tally,* 46 Cal.2d 577, 586 [297 P.2d 981]; *Rice v. Schmid,* 18 Cal.2d 382, 386 [115 P.2d 498, 138 A.L.R. 589].) It thus appears that whether the parties intended the

provision for the retention of the note to be one for liquidated damages to the exclusion of the damages that would otherwise be recoverable and, if so, whether the requirements of Civil Code section 1671 were met, were questions of fact that it was incumbent on defendants to present to the trial court for resolution. Since they did not do so, the judgment cannot be reversed on the theory that the payment of the note constituted liquidated damages. (See *Panopulos* v. *Maderis,* 47 Cal. 2d 337, 340-341 [303 P.2d 738]; *Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534]; *Burdette* v. *Rollefson Construction Co.,* 52 Cal.2d 720, 725-726 [344 P.2d 307].)

Plaintiffs appeal from the part of the judgment allowing defendants a deduction of $750 that defendants paid to a real estate broker in connection with the sale and from the part of the judgment denying interest from the date that the escrow was terminated. They contend that since defendants resold the property without the assistance of a broker, they were saved the expense of a second broker's fee and that therefore they should not be allowed to deduct the broker's fee for the first sale from the amount paid by plaintiffs on the note. There is no merit in this contention, for defendants, not plaintiffs, are entitled to the benefit of any savings defendants effected by reselling their property without the assistance of a broker. (See *Baffa* v. *Johnson,* 35 Cal.2d 36, 39-40 [216 P.2d 13].)

Plaintiffs contend that their right to recover the excess of the payments over the damages suffered by defendants became fixed when defendants terminated the escrow and that therefore they should recover interest on the excess from that date. Civil Code section 3287 provides that "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ." Since the value of the property on which the extent of the damages depended (see Civ. Code, § 3307) was not certain and could not be made certain by calculation (*Kingsbury* v. *Arcadia Unified School Dist.,* 43 Cal.2d 33, 43-44 [271 P.2d 40]; *Coughlin* v. *Blair,* 41 Cal.2d 587, 604 [262 P.2d 305]; *Lineman* v. *Schmid,* 32 Cal.2d 204, 212-213 [195 P.2d 408, 4 A.L.R.2d 1380]), interest did not become payable until the parties stipulated to that value on October 16, 1958. (*Lineman* v. *Schmid,* 32 Cal.2d 204, 210 [195 P.2d 408, 4 A.L.R.2d 1380]; *Gray* v. *Bekins,* 186 Cal. 389, 399 [199 P. 767].) Accordingly,

the trial court erred, not in failing to award interest from the date the escrow was closed, but in awarding it from the date the action was brought.

The judgment is modified to provide that plaintiffs shall recover interest on the principal sum of $13,032.75 from October 16, 1958, instead of from January 24, 1958. As so modified the judgment is affirmed. Each side shall bear its own costs on these appeals.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, J., Dissenting.—The contract involved in this litigation was freely entered into by competent parties who negotiated at arms length and plainly knew what they were doing and understood the terms of the agreement concerning the $15,000 promissory note, its payment, and the specification of the items of consideration to each.

It is not a proper function of this court to remake the contract, amend it, or reevaluate the elements of consideration to the respective parties. The $15,000 mentioned represented the consideration demanded by defendants and agreed to be paid (and actually paid, with interest) by plaintiffs for the very act of defendants' entering into an obligation which for a substantial period of time, among other things: (1) gave to plaintiffs a valuable right which they had not therefore possessed; (2) impaired defendants' title and their right freely to use or dispose of their land; and (3) *only on the terms specified,* including compensation for the detriment so suffered by defendants, further obligated them to sell and convey their land to plaintiffs. On the undisputed facts, both in law and in justice, defendants are entitled to retain the money paid as consideration for that detriment. The mere fact that multiple items and elements are aggregated in the contract to constitute consideration to the respective parties does not authorize the trial court or this court to disregard or strike down any of these items or elements as inconsequential to either party.

Moreover, as conceded in the majority opinion (*ante,* p. 519-520), even if we regard the contract as providing for liquidated damages, it is presumptively valid and there is no showing of illegality. The amount of the note paid by plaintiffs and retained by defendants was less than 5 percent of the total purchase price and was negotiated in view of the length of the escrow. In addition to the hazard to defendants

of keeping the land off the market for six months, there was evidence that at the time the agreement was made the parties knew that the value of the land might be affected by current exploration for oil, the selection of a location for a contemplated freeway, and the general trend from agricultural to commercial and residential uses of land in the area. Thus, not only was the amount to be retained by defendants shown to be reasonable, but it is also established that ''it would be impracticable or extremely difficult to fix the actual damage.'' (Civ. Code, § 1671.) The validity of a liquidated damage provision is, of course, to be determined as a matter of law in the light of the facts known and unknown at the time the agreement was made. (*McCarthy* v. *Tally* (1956), 46 Cal.2d 577, 586-587 [10, 12] [297 P.2d 981]; *Chastain* v. *Belmont* (1954), 43 Cal.2d 45, 58 [10] [271 P.2d 498]; *Better Food Markets* v. *American Dist. Tel. Co.* (1953), 40 Cal.2d 179, 185 [8] [253 P.2d 10, 42 A.L.R.2d 580].) So tested, the agreement here is valid on any reasonable view of the facts.

To require owners who receive a reasonable down payment pursuant to a valid contract to sell their land, to thereafter await the possibility of facing a court judgment that they refund the down payment upon the mere caprice of the buyer who changes his mind and breaches his contract—thus having extracted a valuable consideration but actually having given nothing of value in return—would seem also to mean that the down payment becomes of little value in the hands of sellers, who perforce must preserve it in the form of liquid money on pain of having other assets levied on and sold at execution on the judgment in favor of the defaulting buyer. This is plainly not justice, nor should it be the law; yet it appears but to accent a trend in decisional law. (See *Freedman* v. *The Rector* (1951), 37 Cal.2d 16, 18-19, 22-23 [230 P.2d 629, 31 A.L.R.2d 1]; see also *Jordan* v. *Talbot* (1961), 55 Cal.2d 597, 611 [12 Cal.Rptr. 488, 361 P.2d 20].) It would seem also that a further and more far reaching effect of the instant judgment may well be to encourage other persons to breach their obligations whenever it may appear profitable, convenient, or otherwise desirable to them so to do.

I would reverse the judgment.

McComb, J., concurred.

Appellants' petition for a rehearing was denied September 20, 1961. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.